Jules **CIAMAICHELO** and **Rob Stevens, Inc.**

v.

**INDEPENDENCE BLUE CROSS, Appellant.**

Commonwealth Court of Pennsylvania.

Argued April 11, 2007.

Decided July 2, 2007.

Reargument and/or Reconsideration Denied Aug. 20, 2007.*

---

* Leavitt, J., did not participate.

Richard A. Sprague, Philadelphia, for appellant.

William R. Caroselli, Pittsburgh, for appellees.

BEFORE: LEADBETTER, President Judge, COLINS, Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, and SIMPSON, Judge.

OPINION BY Judge FRIEDMAN.

This case is on remand from the Pennsylvania Supreme Court to resolve whether the Court of Common Pleas of Bucks County (trial court) erred in overruling the preliminary objection of Independence Blue Cross (IBC), i.e., that Counts I and IV of the complaint filed by Jules Ciamaichelo and Rob Stevens, Inc., (together, Plaintiffs) should be dismissed because Plaintiffs lack standing and do not state claims for relief under the Nonprofit Corporation Law of 1988 (Nonprofit Law), 15 Pa.C.S. §§ 5101–6162. We affirm in part, reverse in part and remand for further proceedings.[1]

Rob Stevens, Inc., has a contract with IBC to provide health insurance coverage

---

1. In ruling on whether the trial court properly overruled IBC's preliminary objection, we must determine from the well-pled facts whether it is clear and free from doubt that Plaintiffs will be able to establish standing and a right to relief with respect to Count I and Count IV of their complaint. *Ciamaichelo v. Independence Blue Cross*, 589 Pa. 415, 909 A.2d 1211 (2006).

for employees of Rob Stevens, Inc., under a group policy; in other words, Rob Stevens, Inc., is a policyholder. Jules Ciamaichelo, President of Rob Stevens, Inc., is insured under that group policy as a subscriber. (Complaint, ¶¶ 5–6, R.R. at 8a–9a.) The question, then, is whether a policyholder and a subscriber have standing and a right to relief under Count I and Count IV of the complaint. The trial court ruled that both have standing and a right to relief. We hold, however, that, although a subscriber has standing and a right to relief, a policyholder does not.

## I. Count I

In Count I of their complaint, Plaintiffs allege that IBC has violated section 5545 of the Nonprofit Law, 15 Pa.C.S. § 5545, by failing to apply all incidental profits to the maintenance and operation of IBC's lawful activities.[2] Plaintiffs seek a declaratory judgment and such other relief as may be appropriate.

■ IBC objects and contends that Count I should be dismissed for lack of standing. (R.R. at 45a.) Plaintiffs contend, however, that they have standing to challenge IBC's alleged violation pursuant to section 5793(a) of the Nonprofit Law.

> (a) General rule.—Upon petition of any person whose status as, or whose rights or duties as, a member, director, member of an other body, officer or **otherwise** of a nonprofit corporation are or may be affected by any **corporate action,** the court may hear and determine the validity of such corporate action.

15 Pa.C.S. § 5793(a) (emphasis added) (footnote omitted).

## A. Corporate Action

The words "corporate action" include the "taking of any action on any matter which is required under this article or under any other provision of law to be, or which under the bylaws may be, submitted for action to the members, directors, members of an other body or officers of a nonprofit corporation." Section 5791(2) of the Nonprofit Law, 15 Pa.C.S. § 5791(2). The word "action" in the Nonprofit Law includes "failure to act." Section 5103 of the Nonprofit Law, 15 Pa.C.S. § 5103.

The application of incidental profits is a matter that is required to be submitted for action to the directors or other body of a nonprofit corporation. Indeed, the business and affairs of every nonprofit corporation must be managed under the direction of the board of directors or other body. Section 5721 of the Nonprofit Law, 15 Pa.C.S. § 5721. Moreover, the purposes of a nonprofit corporation are to be effectuated by, or under the authority of, the board of directors or other body, and one of the purposes of IBC is to have no incidental profits. Id.; section 5502(a)(18) of the Nonprofit Law, 15 Pa.C.S. § 5502(a)(18); (Article III of the Articles of Incorporation, R.R. at 90a.)

Because the application of incidental profits is a matter that, by law, must be submitted to the board of directors or other body and because "corporate action" includes the failure to act, IBC's alleged failure to act in accordance with section

---

**2.** Section 5545 of the Nonprofit Law provides, in pertinent part:

> A nonprofit corporation whose lawful activities involve among other things the charging of fees or prices for its services or products, shall have the right to receive such income and, in so doing, may make an incidental profit. **All such incidental prof-** **its shall be applied to the maintenance and operation of the lawful activities of the corporation,** and in no case shall be divided or distributed in any manner whatsoever among the members, directors, or officers of the corporation.

> 15 Pa.C.S. § 5545 (emphasis added).

5545 of the Nonprofit Law with respect to the application of its incidental profits constitutes a "corporate action."

## B. Otherwise—Subscribers

■ The word "otherwise" in section 5793(a) of the Nonprofit Law is used as a pronoun, meaning "something or anything else." Merriam–Webster's Collegiate Dictionary 879 (11th ed.2004). Thus, this court has stated that the word "otherwise" expands the class of persons covered beyond those expressly enumerated in section 5793(a). *White v. Associates in Counseling and Child Guidance, Inc.,* 767 A.2d 638 (Pa.Cmwlth.), *appeal denied,* 566 Pa. 655, 781 A.2d 151 (2001). However, the word "otherwise" refers to classes of persons of the same general nature as a member, director, member of an other body or officer. *Id.*

■ IBC argues that subscribers are not in the same class as members, directors, other body members and officers. Plaintiffs argue to the contrary, pointing out that, pursuant to IBC's Articles of Incorporation, "subscribers are empowered to, *inter alia,* elect [IBC's] Board of Directors, remove the entire Board or individual Board members, amend the articles of incorporation and by-laws, and to dissolve the corporation." (Complaint, ¶ 7, R.R. at 9a.) We agree with Plaintiffs that IBC's Articles of Incorporation place subscribers in the same class as members, directors, other body members and officers.

### 1. Article VI(c)—Nominating Directors

Article VI(c) of IBC's Articles of Incorporation states:

(c) The Bylaws of the Corporation shall always permit three hundred (300) or more Subscribers to place the name of any eligible person in nomination for the office of director in the manner provided in the Bylaws.

(R.R. at 91a.) Under section 5725 of the Nonprofit Law, directors may be elected by members, and **members** may make the nominations. 15 Pa.C.S. § 5725. Thus, Article VI of the Articles of Incorporation gives subscribers the right of members to nominate directors.

### 2. Article VII(a)—Removing Directors

Article VII(a) of IBC's Articles of Incorporation authorizes subscribers to remove an entire board of directors, or any individual director, for no reason.

(a) At any special meeting of the Subscribers called for the purpose in the manner prescribed in the Bylaws by 5% of the Subscribers, the entire Board of Directors, or any individual director[,] may be removed from office without assigning any cause, by a majority of Subscribers present in person or by proxy and voting at such meeting.

(R.R. at 92a.) Under section 5726(a) of the Nonprofit Law, "the entire board of directors, . . . or any individual director, may be removed from office without assigning any cause **by the vote of members** . . . ." 15 Pa.C.S. § 5726(a) (emphasis added). Thus, Article VII(a) of the Articles of Incorporation gives subscribers the right of members to remove an entire board of directors or an individual director.

Moreover, the removal of the directors of a nonprofit corporation falls within the definition of "corporate action." Section 5791(1) of the Nonprofit Law, 15 Pa.C.S. § 5791(1). Thus, under Article VII(a), subscribers have power to take "corporate action," which places them in the same class as members, directors, other body members and officers.

We note that, given the removal power, subscribers could remove IBC's entire board of directors, or individual directors, for failure to apply incidental profits in accordance with section 5545 of the Nonprofit Law. Indeed, the status conferred on subscribers by Article VII(a) gives them an implied right and duty to oversee corporate actions taken, or not taken, by the board of directors. In other words, subscribers have a special relationship with IBC, such that every corporate action taken by the board of directors is subject to their scrutiny and a potential removal action.

### 3. Article VII(b)—Proposing Corporate Action

Article VII(b) of the Articles of Incorporation authorizes subscribers to submit proposals to the board of directors for corporate action.

> (b) Any of the following plans or other corporate action may be proposed by petition of 5% of the Subscribers, which petition shall be directed to the Board of Directors and filed with the Secretary of the corporation:
>
> (1) The amendment of the articles or the adoption, amendment and repeal of the Bylaws.
>
> (2) A plan of sale, lease or exchange of assets under 15 Pa.C.S. § 7930 [renumbered 5930].
>
> (3) A plan of merger, consolidation, division or conversion.
>
> (4) The voluntary dissolution of the corporation.

(R.R. at 92a.)

With respect to Article VII(b)(1), section 5912(a) of the Nonprofit Law requires that "[e]very amendment of the articles of a nonprofit corporation shall be proposed: (1) by the adoption by the board of directors or other body of a resolution setting forth the proposed amendment; [or]

(2) ... by petition of members ... directed to the board of directors and filed with the secretary of the corporation...." 15 Pa.C.S. § 5912(a). Section 5504(a) of the Nonprofit Law gives the power to propose the adoption, amendment or repeal of bylaws to members. 15 Pa.C.S. § 5504(a). Thus, Article VII(b)(1) gives subscribers the right of directors, other body members and members to make proposals relating to the articles of incorporation and bylaws.

With respect to Article VII(b)(2), section 5930(a) of the Nonprofit Law states:

> A nonprofit corporation shall not sell, lease away or exchange all, or substantially all, its property and assets ... unless and until a plan of sale, lease or exchange of assets with respect thereto shall have been adopted by the corporation in the manner provided ... with respect to the adoption of a plan of merger.

15 Pa.C.S. § 5930(a). A plan of merger must be proposed by resolution of the board of directors, or other body, or by petition of members. Section 5922(b)(2) of the Nonprofit Law, 15 Pa.C.S. § 5922(b)(2). Thus, Article VII(b)(2) gives subscribers the right of directors, other body members and members to propose the sale, lease or exchange of assets.

With respect to Article VII(b)(3), section 5922(c) of the Nonprofit Law requires that "[e]very merger or consolidation shall be proposed ... (1) by the adoption by the board of directors or other body of a resolution approving the plan of merger or consolidation; [or] (2) ... by petition of members ... directed to the board of directors and filed with the secretary of the corporation...." 15 Pa.C.S. § 5922(c). Section 5952(c) of the Nonprofit Law states that a plan of division shall be proposed "in the manner provided for the

proposal ... of a plan of merger...." 15 Pa.C.S. § 5952(c). Section 5962(b) of the Nonprofit Law states that a plan of conversion shall be proposed "in the manner provided for the proposal ... of a plan of merger...." 15 Pa.C.S. § 5962(b). Thus, Article VII(b)(3) gives subscribers the right of directors, other body members and members to propose merger, consolidation, division and conversion plans.

With respect to Article VII(b)(4), section 5972(a) of the Nonprofit Law states that voluntary dissolution "shall be proposed by: (1) the adoption by the board of directors or other body of a resolution recommending that the corporation be dissolved voluntarily; [or] (2) petition of members ... directed to the board of directors and filed with the secretary of the corporation...." 15 Pa.C.S. § 5972(a). Thus, Article VII(b)(4) gives subscribers the right of directors, other body members and members to propose voluntary dissolution.

Inasmuch as the Articles of Incorporation give subscribers the powers ordinarily given to directors, other body members or members, we conclude that, for the purposes of section 5793 of the Nonprofit Law, subscribers are in the same class as directors, other body members and members.

## 4. Effect on Status, Rights or Duties

■ Subscribers have standing to challenge a corporate action under section 5793(a) if their status, rights or duties as subscribers "are or may be affected" by that corporate action. 15 Pa.C.S. § 5793(a). Plaintiffs allege that IBC is failing to apply all incidental profits to the management and operation of IBC's lawful activities, i.e., IBC is accumulating a surplus of reserves, because IBC has plans for conversion to a for-profit corporation or for a merger. (Complaint, ¶ 53, R.R. at 22a.) If IBC were to complete a conversion or merger, subscribers may lose the powers that they enjoy through the Articles of Incorporation. Because subscribers' status, rights and duties may be affected by IBC's failure to apply incidental profits pursuant to section 5545 of the Nonprofit Law, subscribers have standing to challenge a corporate action under section 5793 of the Nonprofit Law.[3]

Because Ciamaichelo is a subscriber, he has standing to challenge IBC's alleged failure to take proper corporate action under section 5545 of the Nonprofit Law.

## 5. Subscribers as Members

■ Plaintiffs also argue that IBC has admitted in its brief that Ciamaichelo is a "member" under sections 5545 and 5551 of the Nonprofit Law, 15 Pa.C.S. §§ 5545 and 5551. (Plaintiff's brief at 30.) A party's statement in its brief is treated as a judicial admission, which, although not evidence, has the effect of withdrawing a particular fact from issue. Leonard Packel and Anne Bowen Poulin, Pennsylvania Evidence § 127 (2nd ed.1999).

■ Here, IBC asserts in its brief that, if Ciamaichelo has standing, he would not be entitled to any portion of the incidental profits. (IBC's brief at 17 n. 6.) In support of this assertion, IBC points out that, under sections 5545 and 5551 of the Nonprofit Law, profits may not be distributed to **members** of a corporation. 15 Pa.C.S. §§ 5545 and 5551. We do not read this portion of IBC's brief as an admission that Ciamaichelo is a member of the corpora-

---

**3.** Moreover, IBC's failure to comply with section 5545 of the Nonprofit Law gives rise to the oversight power of subscribers. Because subscribers have an implied duty to oversee the corporate action, or inaction, of directors, any possible violation of the Nonprofit Law would affect that duty.

tion, but, rather, as an argument that, **if** Ciamaichelo were to establish standing **as a member,** he would not be entitled to any portion of the incidental profits.

In this regard, we note that Article V of the Articles of Incorporation states that IBC has no "members." (R.R. at 91a.) Although IBC titles its annual report as the "Annual Report **to our Membership,**" (R.R. at 258a) (emphasis added), and provides "membership" statistics as if IBC had corporate "membership," *see* section 5553 of the Nonprofit Law, 15 Pa.C.S. § 5553, Article V of the Articles of Incorporation controls whether IBC has corporate "membership." Because Article V of the Articles of Incorporation states that IBC has no "members," we conclude that Ciamaichelo lacks standing as a "member" to challenge IBC's alleged failure to take proper corporate action under section 5545 of the Nonprofit Law.

### C. Otherwise—Policyholders

■ Rob Stevens, Inc., is a policyholder, having a contract with IBC to provide group health insurance coverage for its employees. Unlike subscribers to that group policy, policyholders do not have any special status, rights or duties under IBC's Articles of Incorporation. Plaintiffs argue that one purpose of IBC is to enter into group contracts with policyholders. That is true. (*See* Article III of the Articles of Incorporation, R.R. at 91a.) However, a policyholder's contract with a nonprofit corporation does not place the policyholder in the same class as members, directors, other bodies or officers of the corporation.

Plaintiffs argue that policyholders are in the same class as members of a nonprofit corporation because IBC treats them as members. However, the examples provided by Plaintiffs show subscribers, not policyholders, treated as members. Thus, we conclude that Rob Stevens, Inc., lacks standing to challenge the alleged violation set forth in Count I of the complaint.

### II. Count IV

In Count IV of the complaint, Plaintiffs claim that they are entitled to inspect the corporate books and records under sections 5508 and 5793(b) of the Nonprofit Law, 15 Pa.C.S. §§ 5508 and 5793(b). IBC objects that Plaintiffs have no right to such relief.

■ Section 5508(b) of the Nonprofit Law gives every "member" the right to examine the records of the proceedings of the members, directors or other body of the corporation. 15 Pa.C.S. § 5508(b). As indicated above, the Articles of Incorporation states that IBC has no "members." Thus, Ciamaichelo is not entitled to inspect the corporate books and records under section 5508(b).

However, section 5793(b) of the Nonprofit Law provides:

> (b) Powers and procedures.—The court may make such orders in any such case as may be just and proper, with power to enforce the **production of any books, papers and records of the corporation** and other relevant evidence which may relate to the issue.... If it is determined that no valid corporate action has been taken, the court may order a meeting to be held in accordance with section 5792 (relating to proceedings prior to corporate action).

15 Pa.C.S. § 5793(b) (emphasis added). Having determined above that Ciamaichelo has standing as a subscriber under section 5793(a) to challenge IBC's failure to comply with section 5545 of the Nonprofit Law, Ciamaichelo is entitled to ask the trial court to enforce the production of books, papers and records of the corporation related to that issue.

■ Because Rob Stevens, Inc., is not a member of the corporation and lacks standing as a policyholder to challenge corporate action under section 5793, Rob Stevens, Inc., is not entitled to inspect IBC's books and records under section 5508 or section 5793(b).

Accordingly, we affirm to the extent that the trial court overruled IBC's preliminary objection to Ciamaichelo's standing and right to relief with respect to Count I and Count IV. We reverse to the extent that the trial court overruled IBC's preliminary objection to Rob Stevens, Inc.'s, standing and right to relief with respect to Count I and Count IV. In addition, we remand this case to the trial court for further proceedings.

Judge LEAVITT did not participate in the decision in this case.

### ORDER

AND NOW, this 2nd day of July, 2007, the order of the Court of Common Pleas of Bucks County (trial court), dated June 13, 2002, is hereby affirmed in part and reversed in part as set forth in the foregoing opinion. In addition, this case is remanded to the trial court for further proceedings.

Jurisdiction relinquished.

### DISSENTING OPINION BY Judge PELLEGRINI.

This appeal involves whether the Court of Common Pleas of Bucks County (trial court) erred by overruling the preliminary objection filed by Independence Blue Cross (IBC) in which it argued that Counts I and IV of the complaint filed by Jules Ciamaichelo (Ciamaichelo) should be dismissed because Ciamaichelo lacks standing to maintain this action under the Nonprofit Corporation Law of 1988 (Nonprofit Law), 15 Pa.C.S. §§ 5101–6162.[1] Because I disagree to that portion of the majority's opinion concluding that Ciamaichelo, a single subscriber, has standing to challenge the "corporate action" of IBC, I respectfully dissent.

Rob Stevens, Inc. has a group medical insurance policy for which it pays premiums to IBC to insure its employees. Ciamaichelo is the President of Rob Stevens, Inc. and is insured with IBC under its group policy as a subscriber. The question here is whether "a" subscriber has standing to challenge the "validity" of corporate actions under 15 Pa.C.S. § 5793(a) which provides:

(a) General rule. Upon petition of any person whose status as, or whose rights or duties as, a *member, director, member of an other body, officer or otherwise* of a nonprofit corporation are or may be affected by any corporate action, the court may hear and determine the validity of such *corporate action.* (Emphasis and bold added.)

The majority finds that he has standing to challenge the IBC's "corporate action" of allowing incidental profits to accumulate because he falls within the "otherwise" category because, as a "subscriber," under the bylaws, he is given special powers because a subscriber is in the same general class as members, members of other body or directors. I disagree with the majority because an analysis of what "otherwise" means within the framework of the Nonprofit Law leads to the inescapable

---

1. In Count I of the complaint, Ciamaichelo alleged that IBC violated Section 5545 of the Nonprofit Law, 15 Pa.C.S. § 5545, by failing to apply all incidental profits to the maintenance and operation of IBC's lawful activities.

In Count IV of the complaint, Ciamaichelo alleged that he was entitled to inspect the corporate books and records under Sections 5508 and 5793(b) of the Nonprofit Law, 15 Pa.C.S. §§ 5508 and 5793(b).

conclusion that only those given the powers of governance under the Nonprofit Law fall within that term. Because a single subscriber has no governance rights under the IBC Articles of Incorporation or the Nonprofit Law, I would hold that a single subscriber is not an "otherwise" for purposes of being able to challenge a corporate action.

Under the Nonprofit Law, the affairs of the corporation, unless stated otherwise in the corporate bylaws, are under the direction of its board of directors. 15 Pa. C.S. § 5721. The method for electing a board of directors and adopting bylaws are determined by how the nonprofit is organized. In Pennsylvania, a nonprofit corporation can be organized either on a non-stock basis or on a stock-share basis. 15 Pa.C.S. § 5752(a).

Under the stock-share option, the holder of the stock is entitled to one vote per non-transferable share on the adoption of corporate bylaws and election of directors.

15 Pa.C.S. § 5752. If a corporation organizes on a non-stock basis, it can have members or non-members. 15 Pa. C.S § 5306(a)(7).[2] If the corporation organizes on a member basis, the members are given the power to adopt the bylaws and elect and remove directors. 15 Pa.C.S. §§ 5504 and 5726. Members can be required to make capital contributions to the corporation and are liable for judgments and debts to the limits of their contributions, 15 Pa. C.S. § 5552, and when the nonprofit is dissolved, they are entitled to the assets of the nonprofit. 15 Pa.C.S. § 5975.

The other non-stock option is to have no members with directors themselves nominating directors or as set forth in the Articles of Incorporation and the bylaws adopted. 15 Pa.C.S. § 5306(11).[3] IBC has chosen this option.

The IBC Articles of Incorporation provide that it "is organized upon a non-stock basis and shall have no members."[4] Arti-

2. Not only does 15 Pa. C.S § 5306(a)(7) provide that a corporation can incorporate without members, but 15 Pa.C.S. § 5725(b) provides:

> (b) Corporations without voting members.—Where the articles provide that the corporation shall have no members, as such, or where a nonprofit corporation has under its bylaws or in fact no members entitled to vote on a matter, any provision of this article or any other provision of law requiring notice to, the presence of, or the vote, consent or other action by members of the corporation in connection with such matter shall be satisfied by notice to, the presence of or the vote, consent or other action by the board of directors or other body of the corporation.

3. 15 Pa.C.S. § 5306(11) provides:

> (a) General rule.—Articles of incorporation shall be signed by each of the incorporators and shall set forth in the English language:
> (11) Any other provisions that the incorporators may choose to insert if:
> (i) any provision of this subpart authorizes or requires provisions pertaining to the

subject matter thereof to be set forth in the articles or bylaws of a nonprofit corporation or in an agreement or other instrument; or

> (ii) such provisions are not inconsistent with this subpart and relate to the purpose or purposes of the corporation, the management of its business or affairs or the rights, powers or duties of its members, security holders, directors or officers.

4. 19 Pa.Code § 41.7 provides:

> Section 5306(a)(7) of the [Nonprofit Law] (relating to articles of incorporation) authorizes the articles of incorporation of a nonprofit corporation to specify that the corporation is to have no members. In that case, section 5751(b) of the NPCL (relating to classes and qualifications of membership) provides that a provision of law requiring notice to, the presence of, or the vote, consent or other action by members of a nonprofit corporation shall be satisfied by notice to, the presence of, or the vote, consent or other action by the board of directors or other body of the corporation. A

cle V. They give the board of directors the full authority to adopt, amend and repeal the IBC bylaws (Article VIII(b)) and the power to fix the method by which directors are elected in the bylaws. Article VI(6). The Articles of Incorporation also give the Governor of Pennsylvania, the Mayor of the City of Philadelphia, the President of City Council, the Chairman of County Council of Delaware County, and the Chairman of the Board of Bucks, Chester and Montgomery Counties, the power to appoint one person to the board of directors as set forth in the bylaws. Article VI(b). *See* 15 Pa.C.S. § 5767.[5]

Certain rights are given under IBC Articles of Incorporation to "groups" of subscribers. Five percent of the subscribers are given the power to propose to the board of directors changes to the bylaws, sale, merger or voluntary dissolution that the directors may or may not adopt. Article VII(b). The bylaws also permit 300 subscribers to nominate any eligible person to the board of directors, which the directors may or may not elect. Article VI(c). Five percent of the board of directors is allowed to call for a special meeting of subscribers which, at a majority of the subscribers, can remove any individual director or the entire board of directors by a majority of the subscribers. Article VII.

By giving a specified number of subscribers those powers under the Articles of Incorporation, subscribers are an "other body" under the Nonprofit Law. 15 Pa.C.S. § 5103 defines "other body" as:

[A] person or **group,** other than the board of directors or a committee thereof, who pursuant to authority expressly conferred by this subpart may be vested by the bylaws of the corporation with powers which, if not vested by the bylaws in such person or group, would by this subpart be required to be exercised by either:

(1) the membership of a corporation taken as a whole;

(2) a convention or assembly of delegates of members established pursuant to any provision of this subpart; or

(3) the board of directors.

Except as otherwise provided in this subpart a corporation may establish **distinct** persons or **groups** to exercise **different powers** which this subpart authorizes a corporation to vest in an other body. (Emphasis added.)

As an "other body" given those corporate powers, that "other body" would fall within the "otherwise" category as used in 15 Pa.C.S. § 5793(a) and have standing to maintain this action. The question here is whether one subscriber has the right to bring the action on behalf of the "other body" or whether the rights of the "other body" have to be exercised by a "group" of subscribers.[6]

typical provision of the articles reads as follows:
The corporation shall have no members.

5.  15 Pa.C.S. § 5767 provides:
Such power to vote in respect to the corporate affairs and management of a nonprofit corporation and other membership rights as may be provided in a bylaw adopted by the members may be conferred upon:
(1) Registered holders of securities evidencing indebtedness issued or to be issued by the corporation.

(2) The Commonwealth or any political subdivision thereof or other entity prohibited by law from becoming a member of a corporation.

6.  Because 15 Pa.C.S. § 5793(a) specifically allows a "member of an other body" to maintain an action, if a subscriber fell within that definition, we would not need to make an analysis if a subscriber fell within the "otherwise" class. A "member" is a defined term defined as "[o]ne having membership rights in a corporation in accordance with the provi-

In this case, the IBC Articles of Incorporation vests power in **"distinct ... groups"** of subscribers to "exercise different powers"—300 subscribers to nominate a director, five percent of the subscribers to propose what a single director can propose, or the majority who can take action that the full board of directors can take regarding corporate governance. While each of those "distinct groups" may be the "other body" depending on what is involved, one thing is clear—a single subscriber has no power to do anything regarding the governance of IBC. Having no power to do anything, a single subscriber, such as Ciamaichelo, is not the "other body" and as a result, does not have standing under 15 Pa.C.S. § 5793(a) to maintain this action.

Accordingly, I respectfully dissent and would reverse the trial court's decision overruling IBC's preliminary objection to Ciamaichelo's standing and right to relief regarding Counts I and IV.

President Judge LEADBETTER joins this dissenting opinion.

Judge LEAVITT did not participate in the decision of this case.

sions of its bylaws." A member of a nonprofit corporation that created a nonprofit subsidiary, then become "members of other bodies" that can take action to control its actions. Subscribers do not fall within this definition.