Lawrence S. HERMAN, D.C., Nachas, Inc., Jason H. Herman, Mitchell Chiropractic Center, Thomas C. Mitchell, D.C., on behalf of themselves and all others similarly situated, Appellants

v.

CAPITAL BLUE CROSS, a non-profit Pennsylvania Corporation.

Lawrence S. Herman, D.C., Nachas, Inc., Jason H. Herman, Mitchell Chiropractic Center, Thomas C. Mitchell, D.C., on behalf of themselves and all others similarly situated, Appellants

v.

Highmark, Inc. d/b/a Highmark Blue Cross Blue Shield and Pennsylvania Blue Shield, a non-profit Pennsylvania Corporation.

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 2010.

Decided Nov. 4, 2010.

Jerome M. Marcus, Wyncote, for appellants.

Jack M. Stover, Harrisburg, for appellee, Highmark, Inc.

BEFORE: LEADBETTER, President Judge, and FRIEDMAN, Senior Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Lawrence S. Herman, D.C., Nachas, Inc., Jason H. Herman, Mitchell Chiropractic Center and Thomas C. Mitchell, D.C., (together, Herman) appeal from the December 31, 2009, order of the Court of Common Pleas of York County (trial court), which sustained preliminary objections filed by Capital Blue Cross, a nonprofit Pennsylvania Corporation (Capital), and Highmark, Inc., d/b/a Highmark Blue Cross Blue Shield and Pennsylvania Blue Shield, a nonprofit Pennsylvania Corporation (Highmark), (together, the Nonprofits) and dismissed the complaints that Herman had filed against the Nonprofits. We affirm.

Herman filed complaints in the trial court, alleging that the Nonprofits: (1) violated section 5545 of the Nonprofit Corporation Law of 1988 (Nonprofit Law),[1] by failing to apply incidental profits to the maintenance and operation of the lawful activities of the corporation; (2) breached their contracts with Herman; (3) breached their fiduciary duties to Herman; and (4) are required to produce their corporate books and records for inspection by Herman under sections 5508(b) and 5793 of the Nonprofit Law.[2]

The Nonprofits filed preliminary objections, including a demurrer and an objection to Herman's standing. The trial court sustained the objections, concluding that: (1) Herman did not plead sufficient facts to show that he has been aggrieved by the Nonprofits' failure to apply their incidental profits to the operation of their corporations; (2) Herman lacked standing to bring an action for breach of contract because Herman did not refer to a contract in his complaints; (3) Herman lacked standing under section 5793(a) of the Nonprofit Law[3] to bring an action alleging a violation of section 5545 of the Nonprofit Law, an action for breach of contract or an action to produce corporate books and records for inspection; and (4) Herman did not state a cause of action for breach of fiduciary duty. Herman now appeals to this court.[4]

## I. Common Law Standing

■ Herman argues that the trial court erred in concluding that he lacked common

---

1. 15 Pa.C.S. § 5545. Section 5545 of the Nonprofit Law provides, in pertinent part:

   > A nonprofit corporation whose lawful activities involve among other things the charging of fees or prices for its services or products, shall have the right to receive such income and, in so doing, may make an incidental profit. **All such incidental profits shall be applied to the maintenance and operation of the lawful activities of the corporation,** and in no case shall be divided or distributed in any manner whatsoever among the members, directors, or officers of the corporation.

   15 Pa.C.S. § 5545 (emphasis added).

2. 15 Pa.C.S. §§ 5508(b) & 5793. Section 5508(b) of the Nonprofit Law gives every "member" a right to examine the corporate books and records. 15 Pa.C.S. § 5508(b).

Section 5793 of the Nonprofit Law authorizes a court to enforce the production of corporate records in a case brought by a "member, director, member of an other body, officer or otherwise of a nonprofit corporation" challenging the validity of a corporate action. 15 Pa.C.S. § 5793.

3. Section 5793(a) of the Nonprofit Law gives standing to a "member, director, member of an other body, officer or otherwise of a nonprofit corporation" to challenge the validity of a corporate action. 15 Pa.C.S. § 5793(a).

4. Our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *Petty v. Hospital Service Association of Northeastern Pennsylvania*, 967 A.2d 439, 443 n. 7 (Pa. Cmwlth.2009) (*en banc*), *appeal granted in part*, —— Pa. ——, 995 A.2d 873 (2010).

law standing to bring an action for breach of contract. We disagree.

## A. *Petty*

■ In *Petty v. Hospital Service Association of Northeastern Pennsylvania*, 967 A.2d 439, 447–48 (Pa.Cmwlth.2009) (*en banc*), *appeal granted in part*, —— Pa. ——, 995 A.2d 873 (2010), this court held that policyholders and subscribers lack common law standing to challenge the validity of a nonprofit's corporate action. This court stated:

> [T]o adopt Petty's argument [on common law standing] would mean that every person who contracts with a [nonprofit] corporation could go beyond the confines of the underlying agreement and challenge the validity of any of that [nonprofit's] corporate actions. While imaginative, this is nothing more than [an] attempt to circumvent the Legislature's express limitation in Section 5793(a) of the Nonprofit Law that the only parties who are capable of challenging the validity of [nonprofit] corporation action are "a member, director, member of an other body, officer or otherwise of a [nonprofit] corporation." In addition, permitting Petty to establish standing would expose [nonprofit] corporations to litigation and undermine this Court's decision in [*Ciamaichelo v. Independence Blue Cross*, 928 A.2d 407 (Pa.Cmwlth.2007)] where we went to great lengths to interpret Section 5793(a) of the Nonprofit Law and explain how subscribers, with specific gov-

ernance powers enumerated in the articles of incorporation and bylaws were the only ones qualified to maintain actions under the term "or otherwise."

*Petty*, 967 A.2d at 448.[5]

## B. *Liss*

Herman argues that, in *Liss & Marion, P.C. v. Recordex Acquisition Corporation*, 603 Pa. 198, 983 A.2d 652 (2009), our supreme court effectively overruled *Petty* with regard to whether parties to a contract have common law standing to challenge the violation of a statute. We disagree.

The question before the court in *Liss* was whether a private cause of action for breach of an implied contract arises out of a violation of the act known as the Medical Records Act (MRA),[6] specifically the price cap provisions where those provisions are an implied term of the contract.[7] *Liss*, 603 Pa. at 207, 983 A.2d at 657. Our supreme court stated that, inasmuch as the MRA provides no statutory remedy for its violation, "the MRA does not evidence any legislative intent to limit ... common law rights or preempt common law causes of action." *Id.* at 212, 983 A.2d at 660. The court also stated that the "absence of statutory language [providing a remedy] is not a 'term' that can be implied into a contract as a matter of law to bar a common law cause of action where such an action would otherwise be proper." *Id.* at 214, 983 A.2d at 661. Thus, the court held that a party to a contract that includes the MRA price

---

**5.** Herman contends in a footnote that Capital waived the common law standing issue because Capital did not raise that specific objection to Herman's breach of contract claim. (Herman's Brief at 27 n. 5.) However, Herman's breach of contract claim is based on the incorporation of the Nonprofit Law into his health insurance contracts with the Nonprofits, and Capital did object to Herman's standing under section 5793(a) of the Non-

profit Law. (Capital's Preliminary Objections, ¶ 6, R.R. at 34a.)

**6.** 42 Pa.C.S. §§ 6151–6160.

**7.** Section 6152.1 of the MRA caps the prices that medical care providers can charge for copying medical records. 42 Pa.C.S. § 6152.1.

caps could bring a common law cause of action for breach of contract where the other party to the contract has violated the price cap provisions. *Id.* at 210, 983 A.2d at 659.

Based on *Liss,* Herman contends that he can bring a common law breach of contract action against the Nonprofits because the Nonprofit Law is incorporated into his health insurance contracts with the Nonprofits. However, in *Liss,* our supreme court based its holding on the fact that the MRA does not evidence any legislative intent to limit common law remedies. Here, section 5793(a) of the Nonprofit Law expressly limits who may bring an action against a nonprofit corporation challenging a corporate action.

> (a) General rule. Upon petition of any person whose status as, or whose rights or duties as, a member, director, member of an other body, officer or otherwise of a nonprofit corporation are or may be affected by any corporate action, the court may hear and determine the validity of such corporate action.

15 Pa.C.S. § 5793(a). Thus, *Liss* does not effectively overrule *Petty.*

## II. Existence of Contract

■ Herman argues that the trial court erred in concluding that he lacked standing to bring a breach of contract action because he does not refer to a contract in his complaints. Herman points out that, in Paragraph 74 of his complaint against Capital, he avers that "Policyholders and subscribers were parties to contracts for health insurance coverage with [Capital]. These contracts are in [Capital's] possession and, therefore, there is no need to attach copies of them to this Complaint." (Complaint (Capital), ¶ 74, R.R. at 26a.) In the complaint against Highmark, Herman makes the same averment in Paragraph 78. (Complaint (Highmark), ¶ 78,

R.R. at 634a.) Herman also alleges in his complaints that the provisions of the Nonprofit Law are incorporated into those contracts. (Complaint (Capital), ¶ 76, R.R. at 27a; Complaint (Highmark), ¶ 80, R.R. at 634a.)

Assuming that Herman is correct that he properly identified existing contracts, i.e., his health insurance contracts and, by incorporation, the Nonprofit Law, we reiterate that section 5793(a) of the Nonprofit Law expressly limits who has standing to challenge a corporate action. Thus, even if the Nonprofit Law were incorporated into Herman's health insurance contracts, it does not confer standing on Herman to challenge the validity of a corporate action.

## III. Aggrieved

■ Herman argues that the trial court erred in concluding that he failed to plead sufficient facts to show that he is aggrieved by the Nonprofits' retention of incidental profits. Herman actually does allege that he has been harmed, severely harmed, or adversely affected by the excess surplus. (Complaint (Capital), ¶¶ 56, 79, 83, R.R. at 20a, 27a, 28a; Complaint (Highmark), ¶¶ 60, 83, 87, R.R. at 628a, 634a, 636a.) However, he does not allege precisely how he has been harmed.

In *Petty,* this court stated that a litigant can establish that he or she has been aggrieved by showing a substantial, direct and immediate interest in the outcome of the litigation. *Petty,* 967 A.2d at 448. Like Herman, Petty alleged that he had been harmed as a result of the accumulation of excess surplus. *Id.* This court concluded:

> However, Petty fails to plead a direct or immediate interest as to why or how subscribers and policyholders have been harmed by the … surplus other than the mere fact that this alleged action is prohibited by the Nonprofit Law. There

is no allegation that, for example, health care services are no longer being provided through the health insurance contract or are somehow inefficient, but instead Petty asserts a common interest and demands that [the nonprofit] obey the laws of the Commonwealth. Because there is no claim that they have not been provided with the coverage for which premiums have been paid, Petty has not been so aggrieved to establish standing. . . .

*Petty,* 967 A.2d at 448. Pursuant to *Petty,* then, Herman has not pled sufficient facts to establish that he is aggrieved.

## IV. Law of the Case

█ Herman argues that, in *Herman v. Capital Blue Cross, Inc.,* 927 A.2d 750 (Pa.Cmwlth., No. 542 C.D. 2003, filed July 5, 2007) (*Capital I* ), and *Herman v. Highmark, Inc.,* 927 A.2d 750 (Pa.Cmwlth., No. 543 C.D. 2003, filed July 5, 2007) (*Highmark I* ), this court held that the question of standing could not be determined from the facts of record, and this is the law of the case.[8] We disagree.

In *Capital I* and *Highmark I,* this court considered the trial court's order sustaining the Nonprofits' preliminary objections to jurisdiction. This court reversed and remanded to the trial court for disposition of remaining preliminary objections, including the objection to standing. This court stated, in relevant part:

> [The nonprofit] urges this court to affirm on other grounds. . . . [O]ur supreme court has stated that an appellate court should refrain from affirming on other grounds where disputed facts must be resolved. Here, [the nonprofit]

challenges, *inter alia,* Appellants' standing . . . which "cannot be determined from facts of record."

(*Capital I,* slip op. at 5 n. 1, R.R. at 570a; *Highmark I,* slip op. at 6 n. 1, R.R. at 1349a.) This court could not determine whether Herman had standing under section 5793(a) of the Nonprofit Law because, at the preliminary objection stage of the proceedings, we could consider only the well-pled facts, and the complaints did not contain averments regarding the status of subscribers and policyholders in the by-laws or the articles of incorporation of the Nonprofits.

However, on remand, the trial court held a status conference, at which the trial court granted leave to Highmark, with the concurrence of Herman, to submit supplemental exhibits to their preliminary objections, including their by-laws and their articles of incorporation. (Highmark Supplemental Exhibits, R.R. at 1490a.) The trial court then reviewed the articles of incorporation and the by-laws of both Highmark and Capital and determined that those documents did not confer sufficient status on subscribers and policyholders to give them standing to challenge corporate action under section 5793(a) of the Nonprofit Law. (Trial Court Opinion at 13–14.) Because the record before the trial court differed from the record previously before this court and because Herman did not object to the submission of the articles of incorporation and by-laws for consideration, the trial court did not violate the law of the case doctrine.

## V. Fiduciary Relationship

█ Herman argues that the trial court erred in concluding that the Nonprofits do

---

8. The law of the case doctrine embodies a concept that a court involved in the later phases of a litigated matter should not reopen questions decided by a higher court in the earlier phases of the matter. *Commonwealth*

*v. Starr,* 541 Pa. 564, 574, 664 A.2d 1326, 1331 (1995). Thus, a trial court, upon remand, may not alter the resolution of a legal question previously decided by the appellate court in the matter. *Id.*

not have a fiduciary relationship with subscribers and policyholders. In making this argument, Herman relies on: (1) the legal test for a fiduciary duty and Pennsylvania case law stating that an insurer assumes a fiduciary responsibility towards the insured with respect to insurance policy provisions; (2) press releases of the Nonprofits stating that any surplus exists for the subscribers and policyholders; (3) testimony by a senior executive vice president for Pennsylvania Blue Shield in a 1982 administrative proceeding that Pennsylvania Blue Shield acts in a fiduciary capacity to manage subscriber funds;[9] (4) a United States Senate Committee Report stating that non-profit insurers are looked on as having an intrinsic fiduciary responsibility to protect the interests of their subscribers; and (5) case law from New York and New Jersey.

However, in *Petty*, this court rejected "Petty's contention that the trial court erred in holding that he failed to state a claim for breach of fiduciary duty for taking actions which he claims is improper governance." *Petty*, 967 A.2d at 449. This court reiterated that "the only parties who can maintain the action to challenge [a nonprofit's corporate action with respect to surplus] are those listed in 15 Pa.C.S. § 5793(a)." *Id.*

## VI. Section 5793(a) Standing

■ Herman finally argues that the trial court erred in concluding that he lacked standing under section 5793(a) of the Nonprofit Law. Herman asserts that, under *White v. Associates in Counseling and Child Guidance, Inc.*, 767 A.2d 638, 642 (Pa.Cmwlth.2001), any person with a special relationship to the nonprofit corporation has standing to challenge a corporate action. Herman contends that he has a special relationship to the Nonprofits because: (1) as a matter of law, subscribers are the primary reason for the existence of the Nonprofits; (2) the articles of incorporation and/or by-laws establish that subscribers are the primary reason for the existence of the Nonprofits; (3) the public pronouncements of the Nonprofits establish that the surplus exists for the subscribers and policyholders; and (4) the Nonprofits have indicated in other cases that its subscribers are members of the nonprofit corporation.

However, in *Ciamaichelo*, this court stated that, under *White*, the word "otherwise" in section 5793(a) refers to classes of persons of the same general nature as a member, director, member of an other body or officer. *Ciamaichelo*, 928 A.2d at 411. This court then examined the articles of incorporation of the nonprofit to determine whether the articles place subscribers and policyholders in the same class as members, directors, other body members and officers. *Id.* at 411–14. We held that the articles placed subscribers, but not policyholders, in the same class. *Id.* In *Petty*, this court again examined the articles of incorporation of a nonprofit to determine standing under section 5793(a), and this court concluded that the articles did not place the subscribers in the same class as members, directors, other body members and officers. *Petty*, 967 A.2d at 445.

Here, then, the question under section 5793(a) is not whether the subscribers are

---

9. Herman also argues, based on the testimony of the senior executive vice president, that Highmark has admitted that it has a fiduciary relationship with respect to the disposition of surplus. However, Herman does not set forth a separate argument for this issue in his brief.

*See* Pa.R.A.P. 2119(a) (stating that the argument shall be divided into as many parts as there are questions to be argued). Moreover, the testimony of a senior executive vice president is not the law.

the primary reason for the existence of the Nonprofits or whether the Nonprofits have elevated subscribers to the status of members through their public pronouncements. The question is whether the articles of incorporation and/or the bylaws of the Nonprofits elevate subscribers to that level. In this case, the trial court examined the articles of incorporation and by-laws of the Nonprofits and concluded that Herman lacked standing to challenge the validity of a corporate action because neither the articles nor the by-laws placed Herman in the same class as members, directors, other body members and officers.

Accordingly, we affirm.[10]

Judges COHN JUBELIRER, LEAVITT, and BROBSON did not participate in the decision in this case.

## ORDER

AND NOW, this 4th day of November, 2010, the order of the Court of Common Pleas of York County, dated December 31, 2009, is hereby affirmed.

---

10. Herman maintains that the trial court should have given him an opportunity to amend his complaints. However, because this court held in *Petty* that the only persons with standing to challenge a corporate action are those who fall within section 5793(a) of the Nonprofit Law and because the by-laws and articles of incorporation of the Nonprofits do not place subscribers and policyholders in the same class as members, directors, other body members and officers, there is no amendment that could cure the flaws in the complaints.