## Chiodetti v. Fernandes

*Joseph H. Blum,* for plaintiff.

*Kyle N. Thompson, Maureen McBride* and *James C. Sargent,* for defendant.

COLINS, *J.,* March 24, 2014—On July 27, 2007, a jury rendered a verdict in favor of defendant Eugene

Fernandes (Dr. Fernandes) on the medical malpractice claim of plaintiff Gary Chiodetti (Chiodetti) following a trial presided over by the Honorable Judge Gary DiVito,[1] Judge DiVito denied Chiodetti's motion for post-trial relief and Chiodetti appealed on December 13, 2012. Chiodetti timely filed a statement of matters complained of pursuant to Rule 1925b, Pa. R. App. P.

## ISSUES RAISED ON APPEAL

Claiming that he is entitled to either a new trial or judgment notwithstanding the verdict, Chiodetti contends that in ruling on his motions *in limine*, Judge DiVito erred by:

A. Denying Chiodetti's motion to preclude Dr. Fernandes from introducing any exhibits where the Dr. Fernandes failed to furnish advance copies to Chiodetti in accordance with certain court orders;

B. Denying Chiodetti's motion to preclude Dr. Fernandes from introducing the report and testimony of the Dr. Fernandes's expert, Jay S. Duker, M.D., where Dr. Duker's report was untimely;

C. Denying Chiodetti's motion to preclude Dr. Fernandes from introducing the expert report and testimony of Nicholas T. Iliff, M.D., where Dr. Iliff's report was untimely and cumulative;

In addition, plaintiff claims that during trial Judge DiVito erred in:

D. Precluding Chiodetti's expert Marvin Kraushar, M.D., from testifying that an article he authored was

---

1. Retired.

peer reviewed and published; and

E. Precluding Chiodetti's counsel from arguing in closing that the Dr. Fernandes had failed to call a witness that he previously promised to produce.

## PERTINENT BACKGROUND

The Verdict

The verdict sheet was comprised of three questions:

1. Do you find that the conduct of the defendant doctor fell below the applicable standard of care? In other words, was the defendant doctor negligent?

2. Was the defendant doctor's negligence a factual cause of any harm to the plaintiff?

3. State the amount of damages sustained by the plaintiff as a result of the negligence of the defendant doctor.

Exhibit A, defendant's response to plaintiff's motion for post-trial relief (Defendant's response).

The jury returned the verdict sheet with an answer of "no" to the first question and, therefore, did not reach questions 2 and 3.

Procedural Background

On April 13, 2007, twenty-six-year-old Chiodetti presented at the Frankford-Torresdale Emergency Room with injuries sustained when he was assaulted in his neighborhood. A CT scan revealed a displaced fracture of the orbit surrounding his right eye, an injury referred to as an "orbital blow-out fracture." He was admitted with a diagnosis of closed orbital floor, nasal fractures and facial

lacerations, and was placed in the care of Dr. Fernandes. On April 15, 2007, Dr. Fernandes operated on Chiodetti's right eye to repair the orbital fracture. On April 17, 2007, Chiodetti experienced loss of vision in that eye. On April 24, 2007, Chiodetti learned that the loss of sight in his right eye is permanent.

On April 6, 2009, Chiodetti filed a complaint against Dr. Fernandes and Frankford Hospital alleging that the blindness in his right eye resulted from Dr. Fernandes' negligence in inadvertently injecting local anesthesia into Chiodetti's eyeball rather than into the surrounding orbit. The defendants denied all claims of negligence. Defendant Frankford Hospital was dismissed from the case on July 12, 2011, a few days before trial.

Background Pertinent to Rulings Regarding the Experts

Judge DiVito denied Chiodetti's motion *in limine* to preclude documents that Chiodetti claims were never provided to him. *See* order of July 14, 2011 (Control no. 10070081), April Term, 2009, No. 0040. On July 18, 2011, the first day of trial, the judge heard argument on Chiodetti's two other motions *in limine* regarding expert testimony. He denied Chiodetti's motion to preclude the evidence and testimony of Jay S. Duker, M.D., a retinal expert, on the ground that he found that Chiodetti suffered no prejudice as a result of Fernandes' late retention of the expert originally retained by the now-dismissed hospital defendant. N.T., 07.18.2011 at 34. Judge DiVito denied Chiodetti's motion to preclude evidence from Nicholas T. Iliff, M.D., eye surgeon, on the same grounds, namely lack of prejudice. N.T., 07.18.2011 at 18.

Chiodetti's expert, Marvin F. Kraushar, M.D., an

ophthalmologist with a specialty in the retina, testified that the standard of care when administering anesthesia to the eye requires a surgeon to verify the location of the needle by moving it in such a way to ensure that its tip is not inside the eyeball itself before injecting the medication. N.T., 07.18.2011, at 135-39; 148; 156-57. He opined that since Dr. Fernandes did not use this method — referred to in the case as "wiggling" the needle — he inadvertently injected anesthesia into the eye and that the pressure from this additional fluid cut off blood flow to the retina, causing the Chiodetti's blindness. *Id.* at 138; 177-78; N.T., 07.19.2011, at 10. During Dr. Kraushar's testimony, Judge DiVito sustained an objection on hearsay grounds from defense counsel to testimony that an article authored by Dr. Kraushar was peer reviewed. N.T., 07.18.2011, at 151-52 ("It is hearsay because you cannot cross-examine on the peer review"); N.T., 07.19.2011, at 7.

Dr. Fernandes testified on his own behalf and denied that he perforated the globe (eyeball) or that his injection method fell below the standard of care. N.T., 07.19.2011, at 182-85; 191; 197-98; 205-08. Dr. Fernandes presented the testimony of two experts. The first of these was Jay S. Duker, M.D., an opthamologist specializing in medical and surgical treatment of the retina. N.T., 07.20.2011 at 6; N.T., 07.21.2011 at 6. Dr. Duker concluded upon review of all the pertinent records that Dr. Fernandes' administered anesthesia to Chiodetti properly. N.T., 07.20.2011 at 29-35. Further, he rejected Dr. Krausahar's articulation of the standard of care — "wiggling" the needle to verify that it had not perforated the globe — stating, "[t]hat's a particularly bad idea" that it is based on procedure long ago recognized as presenting unacceptable risk of injury.

*Id.* at 37-40. He also said that it was "highly unlikely" that Dr. Fernandes actually perforated the globe. *Id.* at 44-46.

Dr. Fernandes' other expert, Nicholas T. Iliff, M.D., is an ocuplastic eye surgeon N.T., 07.21.2011, at 8 (a surgeon who addresses "problems around the eye that includes some of the difficulties right on the surface of the eyes, but particularly trouble with the eyelids, the bones around the eyes, the tear drain system, the tissues behind the eyes"). Dr. Iliff testified that Dr. Fernandes met the standard of care by directing the needle toward the bone of the orbit, away from the globe in order to reduce risk of perforation. *Id.* at 23-25. Like Dr. Duker, Dr. Iliff testified that Dr. Kraushar's proposed "wiggle" method is not the standard of care and that it is a method that poses undue risk of injury. *Id.* at 27. Dr. Duker also testified extensively on the possible other causes of the Chiodetti's blindness, many of which could not conclusively be ruled out.[2] N.T., 07.20.2011, at 60-72.

Background Pertinent to the Ruling During Closing Argument

During closing argument, the judge sustained defendant's objection to Chiodetti's attorney's reference to Dr. Fernandes's failure to present the testimony of Dr. Arunan Sivalingam, Chiodetti's treating doctor at Wills Eye Hospital, despite Dr. Fernandes's counsel's apparent promise during openings to do so. N.T., 07.21.2011 at 211. The judge did not offer the basis for his ruling.

---

2. The jury found that Dr. Fernandes' conduct did not fall beneath the standard of care. Accordingly, it is not necessary to address plaintiff's arguments regarding causation. *Lykes v. Yates*, 77 A.3d 27, 33 (Pa. Super. 2013) (stating that where a jury does not reach the issue of causation or damages, a new trial will not be granted on the basis of any erroneous evidentiary ruling regarding those issues).

## DISCUSSION

The court has reviewed the record and the parties' post-trial filings. As described more fully below, this court finds ample support for Judge DiVito's rulings and recommends affirming his decisions:

- to allow the admission of the defendant's exhibits and the testimony of his experts, Jay S. Duker, M.D. and Nicholas T. Iliff, M.D.;

- to preclude the plaintiff's expert from testifying that an article he wrote was peer reviewed; and

- to preclude plaintiff's counsel from arguing to the jury that the defendant failed to produce an allegedly promised witness.

I. Evidentiary Rulings

Evidentiary decisions, including those on motions *in limine*, are subject to the trial judge's sound discretion and shall not be disturbed absent an abuse of that discretion or a misapplication of the law. *Klein v. Aronchick, M.D, et al.*, ___ A.3d___, 2014 Pa. Super. 3, 2014 WL 46648, at *2 (Pa. Super. Jan. 7, 2014); *Lykes v. Yates*, 77 A.3d 27, 30-31 (Pa. Super. 2013). An abuse of discretion arises only when a judgment is "manifestly unreasonable" or where "the record shows that the action is a result of partiality, prejudice, bias or ill will." *Caitlin v. Hamburg*, 56 A.3d 914 (Pa. Super. 2012), *appeal denied*, 74 A.3d 124 (Pa. 2013). Having reviewed the record in this matter, this court concludes that Judge DiVito's rulings were sound.

A. Admission of Defendant's Exhibits

Chiodetti complains he was surprised and disadvantaged

when Dr. Fernandes disobeyed a case management order dated June 30, 2009, and a scheduling order dated March 4, 2011, mandating the exchange of exhibits before April 25, 2011. Chiodetti says that he was ambushed at trial because Dr. Fernandes never exchanged pre-marked exhibits, including slides used at trial to depict the anatomy at of the eye.

Dr. Fernandes responds that he furnished an index of bates-stamped exhibits and that Chiodetti had copies of all those exhibits, including documents obtained by subpoena. Exhibit B (June 29, 2011), defendant's response to plaintiff's motion for post-trial relief (defendant's response). As to the "slides," Dr. Fernandes points out that they were anatomical illustrations that were included in the exhibits list and that, in any event, Chiodetti did not object at trial to their use.

Although Judge DiVito did not state his reasons for denying Chiodetti's motion, it appears that he acted well within his discretion. Chiodetti was on notice well in advance of trial as to what exhibits the Dr. Fernandes intended to use and if he believed that he had no notice that the Dr. Fernandes was going to use "slides" or illustrations as demonstrative evidence, he failed to object when they were introduced. Since Chiodetti's claim of prejudice is unsubstantiated, Judge DiVito acted entirely properly in refusing to deprive the Dr. Fernandes of his defense, and Chiodetti has cited no authority requiring a different result.

B. Admission of Testimony of Defendant's Expert Jay S. Duker, M.D.

Chiodetti claims that mandatory exclusion Dr. Jay S. Duker's testimony was warranted for two reasons. First, he

argues that Dr. Duker's report was produced 108 days late, in violation of court orders. Specifically, the production of Dr. Duker's report did not comply with deadlines set forth in three orders dated September 23, 2009, June 30, 2009, and March 4, 2011, respectively. He complains that the report was not submitted until eleven days before the case was scheduled to be trial ready and four days before the pre-trial conference. He argues that since the defendant never identified any extenuating circumstances or requested any extensions, preclusion is mandatory under Rule 4003.5, Pa. R. P.[3]

Defendant counters that Chiodetti received Dr. Duker's report and curriculum vitae in April of 2011, some three months before trial actually began. Exhibit G, defendant's response. Further, says Dr. Fernandes, Dr. Duker substantially adopted the opinion on the standard of care articulated by defense expert Dr. Nicholas J. Volpe, whose report was disclosed on January 3, 2011, four months earlier. Finally, Dr. Fernandes points out that by the time of trial, Chiodetti's own expert, Dr. Marvin F. Karushar, had prepared a report in rebuttal to Dr. Duker.

Following argument on July 18, 2011, Judge DeVito denied Chiodetti's motion to preclude Dr. Duker's testimony because he found that the Chiodetti suffered no unfair prejudice, noting in particular that the Chiodetti had submitted a rebuttal. N.T., 07.18.2011, at 34. Chiodetti had notice of Dr. Duker's report well before trial, he had notice of the liability theory well before that, and he took the opportunity to prepare and submit a rebuttal. Dr. Duker's

---

3. Rule 4003(b) provides for the preclusion an expert witness whose identify has not been disclosed in accordance with the rules. Judge DiVito did not accept Chiodetti's claim that Dr. Duker's identity was untimely.

evidence predictably weighed against Chiodetti's theory of the case, but this is not the sort of prejudice against which the rules guard. Rather, the court must ensure that the jury is not presented with evidence that *unduly* influences its deliberations or makes decisions based on improper evidence. *Lykes v. Yates*, 77 A.3d 27, 33 (Pa. Super. 2013) ("'Unfair prejudice' supporting exclusion of relevant evidence means a tendency to suggest decision on an improper basis or divert the jury's attention away from its duty of weighing the evidence impartially"). Since Chiodetti made no such showing, Judge DiVito neither erred as a matter of law nor did he abuse his discretion.

C. Admission of Testimony of Defendant's Expert Nicholas T. Iliff, M.D.

Chiodetti says that Judge DiVito should have precluded the testimony of defense expert Dr. Nicholas T. Iliff because the defendant did not retain Dr. Iliff until the day before trial and that this belated decision constituted unfair surprise — "trial by ambush" — that Chiodetti was powerless to counter. Dr. Fernandes claims his own surprise at Chiodetti's position because: Dr. Iliff was the expert retained by co-defendants Frankford Hospital which was dismissed on the eve of trial in July of 2011; Dr. Iliff's report was available to the plaintiff as early as January 3, 2011; Dr. Fernandes listed Dr. Iliff as his own witness in his pre-trial memorandum dated April 12, 2011, and attached a copy of his report (Exhibit D, defendant's response); and plaintiff cites no authority for the proposition that Dr. Fernandes could not rely on his co-defendant's expert or retain him directly when the co-defendant was taken out of the case.

Judge DiVito denied plaintiff's motion because, again, he found that the plaintiff had suffered no unfair prejudice. This court finds no basis to second-guess this judgment. Since Dr. Iliff was in the case long before trial and, according to Dr. Fernandes' own pre-trial memo and attachments, was expected to serve as his witness, Chiodetti can advance no credible claim to surprise. Chiodetti's argument is baseless.

Chiodetti also challenges Dr. Iliff's testimony as cumulative to that of Dr. Duker. Dr. Fernandes correctly points out, however, that the two experts brought the perspectives of differing specialties and that while Dr. Iliff testified as to the standard of care for the surgery in question, Dr. Duker's testimony also addressed the possible causes of the Chiodetti's blindness, a separate subject of considerable dispute throughout the trial. In any event, even if the testimony were duplicative, it was well within the discretion of the court to allow it absent any showing of undue prejudice.

D. Preclusion of Testimony of Plaintiff's Expert That an Article He Authored was Peer Reviewed.

Judge DiVito disallowed testimony from Dr. Kraushar that an article he had written was peer reviewed. N.T., 07.18.2011, at 151-52. Chiodetti argued that since Dr. Karushar's testimony concerned Dr. Kraushar's own writing it could not be deemed hearsay. The Judge's ruling was based on the hearsay *inherent* in a claim of "peer" review. He reasoned that an endorsement of an article's contents by a peer is hearsay because, effectively, it is an out-of-court statement by that peer that cannot be subjected to cross-examination. *Id.* The decision to preclude such

classic hearsay is neither an error of law nor an abuse of discretion.

E. Preclusion of Plaintiff's Reference in Closing Argument to Defendant's Failure to Produce Witness he Allegedly Promised Would Appear

The judge sustained defendant's objection to plaintiff's counsel attempt during his closing to refer to the fact that Dr. Fernandes did not introduce the testimony of Dr. Sivalingam, Chiodetti's treating physician at Wills Eye Hospital, even though defense counsel told the jury during his opening that this doctor would appear. N.T., 07.21.2011, at 211. Chiodetti wished to convince the jury that it could draw a negative inference from defense counsel's change in strategy, namely that Dr. Sivalingam's testimony would have undermined Dr. Fernandes's case.

Judge DiVito did not state the reason for his ruling. Defense counsel represents that the parties discussed the use of Dr. Sivalingam's deposition testimony during an off-the-record conference with the judge, that Chiodetti's counsel stated that he was considering introducing Dr. Sivalingam's testimony himself if Dr. Fernandes did not do so, but that ultimately he chose not to. Page 27 (unpaginated), defendant's brief in response; see an apparent reference to this matter at N.T., 07.20.2011, at 4. This representation stands uncontradicted by plaintiff's counsel and, if it is accurate, Judge DiVito's ruling is consistent with the expectation of the parties. In any event, as the experts on both sides testified without objection to the contents of Dr. Sivalingam's clinical records, and since that testimony was subject to cross-examination, the record does not support a conclusion that precluding the

adverse-inference argument was unfairly prejudicial to the plaintiff. The ruling was entirely within the purview of the judge's discretion.

II. Judgment Notwithstanding the Verdict

Our standard of review when reviewing a trial court's denial of a motion for judgment notwithstanding the verdict (JNOV) is well settled:

> "We must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference...A [judgment n.o.v.] should be entered only in a clear case."

*Hatwood v. Hosp. of the Univ. of Pennsylvania*, 55 A.3d 1229, 1236 (Pa. Super. 2012) *appeal denied*, 65 A.3d 414 (Pa. 2013).

This is not a "clear case" warranting JNOV. The only question whether the record was sufficient for the jury's verdict which was simple and limited to standard of care: by answering "no" to the first question on the verdict sheet, it concluded that Dr. Fernandes either did not actually perforate Chiodetti's eyeball or, if he did, his method did not fall beneath the standard of care for administering anesthesia to a patient suffering an orbital fracture. On this question the jury was entitled to credit the defendant's expert testimony over that of Chiodetti's and that testimony amply supports either conclusion. Judge DiVito's decision to deny JNOV was sound.