# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

R. W-M.,[1]                              :
              Petitioner           :
                                          :
                                          : No. 1817 C.D. 2017
           v.                          : Submitted: September 18, 2018
                                            :
Unemployment Compensation                :
Board of Review,                         :
              Respondent          :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ROBERT SIMPSON, Judge (P)
                HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**               **FILED: January 9, 2019**

       R. W-M. (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board) that denied her claim for benefits under Section 402(e) of the Unemployment Compensation Law[2] (Law). In so doing, the Board adopted a referee's findings and conclusions that Claimant's excessive tardiness violated an attendance policy of her employer, a retailer located in the Philadelphia suburbs (Employer), which required that an employee appear for work on time and not leave early. Claimant contends the Board erred in determining she engaged in willful misconduct because: Employer failed to establish an attendance policy existed; Claimant established good cause for violating the alleged

---

[1] On our own motion, we amend the caption to use only the initials of the Petitioner.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(e). Section 402(e) provides, in pertinent part, that "[a]n employe shall be ineligible for compensation for any week … in which [her] unemployment is due to [her] discharge or temporary suspension from work for willful misconduct connected with [her] work …."

work rule; and Employer did not strictly enforce its policy in the past and tolerated Claimant's previous deviations from the alleged attendance policy. Upon review, we affirm.

## I. Background

The following description tracks the findings adopted by the Board (with emphasis added). Claimant worked for Employer as a full-time sales associate from November 1999 until Employer discharged her on May 25, 2017. Employer has an attendance policy that requires its employees to report to work on time. Employer's policy further requires that if an employee is going to be late, she must call in and speak to a manager or to Human Resources, state the reason for being late, and provide an estimated arrival time. Claimant was aware of Employer's policies and expectations.

Claimant had medical restrictions limiting her to working no more than eight hours a day or 40 hours per week. Employer accommodated these restrictions. Employer scheduled Claimant to begin working at 9:15 a.m. when working during the day.

During the month of January 2017, Claimant reported late for work on 15 occasions. On January 24, 2017, Employer placed Claimant on final warning status regarding her tardiness. Between January 1, 2017 and May 25, 2017, Claimant reported late on 76 occasions. Claimant never provided a medical note indicating she needed a later starting time for work. On May 25, 2017, Employer discharged Claimant for habitual tardiness after being warned to be on time for work.

2

Thereafter, Claimant filed a claim for unemployment compensation benefits. The Department of Labor and Industry (Department) denied her claim under Section 402(e) on the basis that Employer established it discharged Claimant for tardiness after being warned that future tardiness could result in termination of her employment. See Notice of Determination; Reproduced Record (R.R.) at 18a. The Department also determined Claimant failed to show good cause for her last tardiness. Id.

Claimant appealed, and a referee's hearing ensued. Among other items identified and received as exhibits at the beginning of the hearing was Exhibit 2A, a "Fax Petition for Appeal" specifically authenticated by Claimant. See Referee's Hr'g, Notes of Testimony (N.T.), 8/1/17, at 3; R.R. at 39a; Pet. for Appeal, 24a-25a. In an attached document, Claimant described her diagnoses as "Hyperthyroidism, Bronchitis, Anxiety and Major Depression." R.R. at 25a. She also explained that "[t]wo of the medications caused extreme fatigue, nausea, severe stomach and digestive problems, fainting, light headedness and anxiety attacks which at times occurred at various times especially in the morning hours." Id.

Following the hearing, the referee issued a decision and order affirming the Department's notice of determination. In particular, the referee determined Claimant's conduct fell below the standard of behavior Employer had a right to expect. In explaining her decision, the referee stated (with emphasis added):

> The Pennsylvania Courts have consistently held that habitual tardiness, without good cause, particularly after warnings to be on time, is disqualifying misconduct.

3

In this case [Employer] has an expectation that employees report to work on time. [Claimant] was aware of [Employer's] expectation. [Claimant] had received warnings to be on time and on January 24, 2017 was placed on final warning regarding her tardiness. [Claimant] continued to be late for work. In the totality of circumstances, although [Claimant] might have had good cause for the last tardiness, [Claimant] was late for work on approximately sixty other occasions after receiving a final warning on January 24, 2017. [Claimant] argued that her tardiness had to do with a medical reasons [sic]. [Claimant] did provide restrictions regarding her work schedule to [Employer] related to her medical reasons and the start time was not one of those reasons provided. Therefore, the [r]eferee finds [Claimant's] assertion not credible.

Based on the record, [Claimant's] conduct was contrary to the standard of behavior [Employer] has the right to expect and benefits are denied.

Referee's Op., 8/8/17; R.R. at 92a-93a.

On appeal, the Board adopted the referee's findings and conclusions and affirmed. In its order, the Board noted it did not find any credible evidence that Claimant's medical conditions caused her tardiness. Board's Order, 10/5/17; R.R. at 88a. Claimant petitions for review.[3]

## II. Issues

Claimant advances three arguments in support of her contention that the Board erred in determining Employer met its burden of proving it discharged her

___

[3] Our review is limited to determining whether the Board's necessary findings of fact were supported by substantial evidence and whether the Board erred as a matter of law or violated constitutional rights. Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006 (Pa. Cmwlth. 2014).

4

for willful misconduct. Claimant asserts her actions did not rise to the level of willful misconduct because: Employer failed to establish that an attendance policy existed; she can show good cause for violating Employer's attendance policy; and Employer did not strictly enforce its attendance policy in the past and tolerated her previous deviations from the alleged policy.

### III. Discussion
### A. Willful Misconduct; Violation of a Work Rule (Generally)

Pursuant to Section 402(e) of the Law, 43 P.S. §802(e), a claimant is ineligible for unemployment compensation benefits when an employer discharges her for willful misconduct connected with her work. Ellis v. Unemployment Comp. Bd. of Review, 59 A.3d 1159 (Pa. Cmwlth. 2013). Although the Law does not specifically define "willful misconduct," our appellate courts describe it as: (a) a wanton or willful disregard of an employer's interests; (b) a deliberate violation of an employer's rules; (c) a disregard of the standards of behavior an employer can rightfully expect of an employee; or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties and obligations. Id.

The issue of whether a claimant's conduct constituted willful misconduct is a question of law fully reviewable by this Court. Grand Sport Auto Body v. Unemployment Comp. Bd. of Review, 55 A.3d 186 (Pa. Cmwlth. 2012) (*en banc*). However, a determination of willful misconduct must be based on a consideration of all of the circumstances in the case. Id. An employer bears the initial burden of showing a claimant's conduct rose to the level of willful misconduct. Id. Once the employer proves willful misconduct, the burden then shifts to the claimant to show

5

good cause for her actions.  Id.  A claimant can establish good cause if her actions are justifiable and reasonable under the circumstances.  Id.

An employer seeking to prove willful misconduct by violation of a work rule or policy must demonstrate the existence of the policy, its reasonableness, and its violation.  Ellis.  However, the existence of a specific work rule or policy is not required in circumstances where an employer has a right to expect a certain standard of behavior, that standard is obvious to an employee, and an employee's conduct is so inimical to the employer's interest that discharge is a plainly foreseeable result.  Id.  One such situation where a specific policy is not necessary is when an employee fails to show up for work on time.  Id.  We have recognized on multiple occasions that an employer has a right to expect that its employees will attend work as scheduled and be on time.  Id.

### B.  Existence of Employer's Attendance Policy
### 1. Argument

Claimant first contends Employer failed to meet its burden of proving the existence of an attendance policy requiring employees to report to work on time. To that end, Claimant asserts the record is devoid of any written policy or procedure she violated.  Rather, the only evidence Employer presented regarding the alleged attendance policy and disciplinary procedure consisted of unconfirmed testimony from Employer's Human Resources Manager (HR Manager).

Claimant acknowledges HR Manager testified that Employer's attendance policy requires that its employees are expected to report to work on time.

6

<u>See</u> N.T. at 7; R.R. at 43a. If they are not going to be on time, the employees must call either their manager or Human Resources. <u>Id.</u> HR Manager also testified that although Employer has a progressive disciplinary policy, it is within Employer's discretion to decide which steps to follow. <u>Id.</u> Viewing HR Manager's testimony as true, Claimant asserts an employee could be disciplined, suspended or terminated whenever HR Manager wished because Employer decides which step of the disciplinary policy to follow.

Claimant further acknowledges that HR Manager testified that Employer's attendance policy is written. N.T. at 7; R.R. at 43a. The referee also found Claimant was aware of the policy and Employer's expectations. However, given the absence of a written policy in the record, Claimant argues the Board could not reasonably conclude that the referee's findings regarding the existence and content of Employer's attendance policy, and Claimant's awareness of it, were supported by substantial evidence. Therefore, Claimant maintains the Board erred in affirming the referee's decision.

In response,[4] the Board argues an employer need not produce a written copy of its attendance policy in order to establish that such a policy existed. The

---

[4] The Board contends Claimant waived any substantial evidence challenge to its adopted findings by failing to raise this issue in her statement of questions involved. Pennsylvania Rule of Appellate Procedure 2116(a) provides in pertinent part (with emphasis added):

> **(a) General Rule.** The statement of questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. The statement will be deemed to include any question fairly comprised

7

Board asserts it is not necessary that an employer's reasonable rule or policy be written in order for this Court to determine an employee's violation of that rule or policy constituted willful misconduct. Graham v. Unemployment Comp. Bd. of Review, 840 A.2d 1054 (Pa. Cmwlth. 2004); Fera v. Unemployment Comp. Bd. of Review, 407 A.2d 942 (Pa. Cmwlth. 1979); Williams v. Unemployment Comp. Bd. of Review (Pa. Cmwlth., No. 2733 C.D. 2010, filed June 14, 2018) (unreported).[5] Therefore, the Board argues HR Manager's testimony sufficiently established the existence of Employer's attendance policy requiring that its employees report to work on time.

## 2. Analysis

We reject Claimant's contention that, Employer, by not submitting a written copy of its attendance policy, failed to establish the existence of that policy. As we recognized in Ellis and Grand Sport Auto, regardless of the existence of a specific policy, an employer has a reasonable right to expect its employees will attend work when scheduled and report to work on time. We further recognized that habitual tardiness is fundamentally contrary to an employer's interests and thus supports a

---

therein. No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.

Pa. R.A.P. 2116(a). Our review of Claimant's petition for review and brief indicates she adequately preserved a substantial evidence challenge to the Board's Findings of Fact Nos. 2-4, which stated that Employer had an attendance policy that required its employees to report to work on time, that the employees call a manager or Human Resources if they are going to be late, and that Claimant knew these policies existed. See Pet. For Review ¶6. Further, Claimant's brief clearly raises and discusses this issue. See Pet'r's Br. at 17-19.

[5] Pursuant to Section 414 of this Court's Internal Operating Procedures, this Court's unreported memorandum opinions, issued after January 15, 2008, may be cited for their persuasive value, but not as binding precedent. 210 Pa. Code §69.414.

determination of willful misconduct. Ellis; Grand Sport Auto (citing Fritz v. Unemployment Comp. Bd. of Review, 446 A.2d 330 (Pa. Cmwlth. 1982)).

Here, HR Manager credibly testified Employer has a written policy on tardiness that requires its employees to report to work on time. N.T. at 7; R.R. at 43a. If an employee is not going to be on time, the policy requires that the employee notify either a manager or Human Resources and explain why she is going to be late. Id. To that end, HR Manager testified that a first offense would not result in termination and, if an employee provides a legitimate reason for being late, Employer would review it. N.T. at 8; R.R. at 44a. HR Manager further testified Employer has a progressive disciplinary policy that can lead to a written or final warning, suspension or termination of employment. Id. Employer also determines which steps to follow. Id. As discussed above, it is not necessary that an Employer's attendance policy be submitted into evidence in order for a determination that Claimant's habitual violation of the policy constituted willful misconduct. Ellis; Graham.

Furthermore, as this Court recognized on prior occasions, the "best evidence rule" in Rule 1002 of the Pennsylvania Rules of Evidence, which requires that to prove the content of a writing, the original must be produced, is a technical rule of evidence not generally applicable to administrative proceedings. DiLucente Corp. v. Prevailing Wage Appeals Bd., 692 A.2d 295 (Pa. Cmwlth. 1997); Wilshire v. Unemployment Comp. Bd. of Review (Pa. Cmwlth., No. 1765 C.D. 2013, filed April 30, 2014) (unreported). In particular, the best evidence rule does not apply in unemployment compensation cases. Fera; Wilshire. Therefore, we reject Claimant's

contention that Employer's failure to submit a written version of its attendance policy into evidence rendered a finding that such a policy existed unsupported by the record.

In addition to HR Manager's own testimony regarding Employer's attendance policy, Claimant admitted HR Manager advised her that if she was running late, she must call either Human Resources or a manager. N.T. at 22; R.R. at 58a. Claimant also recalled that either HR Manager or her immediate manager advised her that she needed to be on time for work. N.T. at 23; R.R. at 59a.

Summarizing, the Board's findings of fact are conclusive on appeal if the record contains substantial evidence to support the findings. Taylor v. Unemployment Comp. Bd. of Review, 378 A.2d 829 (Pa. 1977). Here, the Board's findings that Employer had an attendance policy that required its employees to report to work on time, that employees call a manager or Human Resources if they are going to be late, and that Claimant knew these policies existed, are supported by substantial evidence. Consequently, Claimant's contention that Employer failed to meet its burden of proving the existence of an attendance policy that required its employees to report to work on time lacks merit. Graham; Fera.

### C. Employer's Toleration of Claimant's Previous Deviations
### 1. Argument

We next address Claimant's contention that her tardiness did not rise to the level of willful misconduct because Employer did not strictly enforce its attendance policy in the past and tolerated her previous deviations from any alleged attendance or tardiness rules. In support of her position, Claimant cites Penn

10

<u>Photomounts, Inc. v. Unemployment Compensation Board of Review</u>, 417 A.2d 1311 (Pa. Cmwlth. 1980) and <u>Great Valley Publishing v. Unemployment Compensation Board of Review</u> (Pa. Cmwlth., No. 49 C.D. 2015, filed March 8, 2016)(unreported).

In <u>Penn Photomounts</u>, the employer had a formal, written policy concerning the procedure for its employees to follow when notifying the employer of an absence. Pursuant to the policy, an absent employee was required to notify the employer's main office on the first day out by 9:00 a.m. The employee was also required to advise the employer as to the estimated date of return. Copies of the policy were displayed on bulletin boards throughout the employer's place of business. However, the claimant in <u>Penn Photomounts</u> did not follow this policy. Rather, she called her coworkers in a building separate from the main office and asked them to relay the message to someone in a supervisory position. The claimant testified the informal manner in which she reported her absences was an accepted practice and that other employees reported their absences the same way. The claimant further testified the employer never reprimanded her or informed her she could be discharged for not reporting her absence directly to the main office.

The employer's plant supervisor testified that the employer did not accept, but tolerated the employees' practice of reporting their absences by calling other employees rather than the main office for short term absences. However, if an employee abused the process, the employer firmly enforced its regulations.

Ultimately, the Board resolved any conflicts in the evidence in the <u>claimant's</u> favor and found she always reported her absences by calling other

11

employees who relayed the message to the main office. Based on this past practice, the Board determined that the claimant reported the absence at issue in her usual manner and that any violation of the employer's formal policy did not amount to willful misconduct. On appeal, we affirmed.

Similarly, in Great Valley Publishing, the employer had a policy prohibiting its employees' personal use of its computers and internet service without advance permission. The claimant signed the employer's manual, which included this policy. The employer, however, tolerated its employees' personal use of its computers if it was not excessive. Although the employer did not specify an accepted level of personal use, it took disciplinary action on a case-by-case basis. In the claimant's case, the employer terminated her for egregious, unpermitted internet usage. The Board, however, credited the claimant's testimony that her internet usage was minimal rather than excessive. Accordingly, the Board ruled her eligible for benefits. Citing Penn Photomounts, we affirmed, noting the employer tolerated its employees' personal use of the internet if such use was not excessive.

Here, Claimant asserts Employer did not follow its own policies and practices under the attendance policy and tolerated her deviation from the policy for months. At the referee's hearing, Employer alleged Claimant was tardy 15 times during the month of January 2017. However, HR Manager testified this resulted in only one written warning issued on January 25, 2017. See N.T. at 9; R.R. at 45a. Employer further alleged Claimant was tardy on 76 total days from January 1 through May 25, 2017. Nevertheless, during this period, Employer issued Claimant only one

12

more warning and a five-day suspension on April 27, 2017. See N.T., Ex. 5(d); R.R. at 10a. Notably, Claimant does not contest the accuracy of her tardiness figures.

Claimant argues Employer's random pattern of written warnings constituted an inconsistent and arbitrary application of its attendance and progressive discipline policies. More importantly, Claimant maintains Employer's actions show it regularly permitted her to be tardy without any consequence. Therefore, Claimant contends she did not act contrary to the standards of behavior Employer expected of her.

In addition, Claimant avers Employer did not discipline anyone other than her for tardiness on her last day of work, despite the fact that many of her coworkers were late because of traffic problems. Claimant asserts HR Manager corroborated this fact.

In sum, Claimant argues Employer tolerated her alleged tardiness and applied its attendance and progressive discipline policies arbitrarily. Therefore, Claimant argues the record does not support the referee's determination that her conduct fell below the standards of behavior Employer expected of her. As such, Claimant maintains the Board erred and abused its discretion by affirming the referee's decision that her tardiness rose to the level of willful misconduct.

**2. Analysis**

As discussed above, excessive absenteeism or habitual tardiness may rise to the level of willful misconduct. Ellis; Grand Sport Auto; Fritz. In particular,

13

employers have a right to expect that their employees will attend work as scheduled, arrive on time, and not leave work early without permission. Ellis. Chronic or habitual lateness is contrary to an employer's legitimate expectations and is an adequate basis for a determination of willful misconduct. Id.

In Grand Sport Auto, an *en banc* case, the claimant had a history of excessive absences and late starts. In the seven months prior to his employer-approved wedding trip to Mexico, the claimant was tardy or absent 19 times without a valid excuse. Unfortunately, the airline overbooked the claimant's return flight from Mexico, and he did not return to work as scheduled. When he returned the next day, the employer suspended him pending review of his situation. Three days later, the employer discharged the claimant because of his history of absences and tardy arrivals. In granting benefits, the Board found the claimant's last absence was justified because the airline rebooked him on a later flight. The Board also agreed with the referee that excessive absenteeism or tardiness, where justified or properly reported, may constitute a legitimate basis for discharge, but does not rise to the level of willful misconduct. In so doing, the Board relied on Runkle v. Unemployment Compensation Board of Review, 521 A.2d 530 (Pa. Cmwlth. 1987), where the claimant's documented medical issues justified her weeklong absence from work.

In reversing the Board, we observed that only three of the claimant's 19 absences appeared to be justified by medical reasons. Consequently, unlike Runkle, the majority of the claimant's absences in Grand Sport Auto were not justified.

We also rejected the argument that the claimant should be granted benefits because his last absence was justified. The Court, speaking through Judge Cohn Jubelirer, recognized the claimant's history of absences and tardiness, rather than just one incident, precipitated his discharge. Thus, we concluded the employer established that the claimant's habitual and unexcused absences and tardiness fell below the standard of behavior it had a right to expect of an employee. See Dotson v. Unemployment Comp. Bd. of Review, 425 A.2d 1219 (Pa. Cmwlth. 1981) (regardless of whether the claimant's last absence was justified by illness, the claimant's history of repeated, inexcusable tardiness or absences constituted willful misconduct). We conclude that Grand Sport Auto and Dotson control here.

Turning to the facts in the present case, the Board found Claimant was late for work 15 times during the month of January 2017. Finding of Fact (F.F.) No. 8. This finding is supported by HR Manager's testimony and Employer's timekeeping records, admitted into evidence without objection. See N.T. at 9; R.R. at 45a; Ex. E-1, R.R. at 65a-66a. The Board also found that on January 24, 2017, Employer issued Claimant a written final warning. F.F. No. 9. At the referee's hearing, Employer introduced the final warning into evidence as Exhibit 5(d). Employer's warning provides (with emphasis added):

> [Claimant] is being placed on Final Warning for failure to adhere to [Employer's] Policies and Procedures.
>
> We have thoroughly reviewed the situation with [Claimant]. She acknowledges the seriousness of these types of offenses and is fully aware that this type of behavior will not be accepted.
>
> [Claimant] understands that it is her responsibility to follow all [Employer] policies and guidelines. Any future

15

violations of [Employer] Standards of Conduct or [Employer] Policies and Procedures will be further addressed with disciplinary action, up to and including termination of employment.

Ex. 5(b); R.R. at 13a.

Nonetheless, the Board found Claimant reported late for work on 76 occasions between January 1 and May 25, 2017, her last day of work. F.F. No. 10. This finding is also supported by HR Manager's testimony and Employer's timekeeping records. See N.T. at 9, 12; R.R. at 45a, 48a; Ex. E-1, R.R. at 65a-71a. In addition, Claimant acknowledged receiving another final warning and a five-day suspension on April 27, 2017, approximately a month before Employer discharged her. See Pet'r's Br. at 24. "A party's statement in its brief is treated as a judicial admission, which although not evidence, has the effect of withdrawing a particular fact from issue." Ciamaichelo v. Independence Blue Cross, 928 A.2d 407, 413 (Pa. Cmwlth. 2007). Employer's second final warning provides:

> [Claimant] is being placed on Final Warning plus a 5[-] day suspension for failure to adhere to [Employer's] Policies and Procedures.
>
> We have thoroughly reviewed the situation with [Claimant]. She acknowledges the seriousness of these types of offenses and is fully aware that this type of behavior will not be accepted.
>
> [Claimant] understands it is her responsibility to follow all [Employer] policies and guidelines. Any future violations of [Employer] Standards of Conduct or [Employer] Policies and Procedures will be further addressed with disciplinary action, up to and including termination of employment.

16

Ex. 5(d); R.R. at 10a.

Although Claimant attributes her tardiness to medical problems caused by her depression medication, the Board specifically found Claimant's evidence not credible. Bd. Op. at 1. Consequently, as noted above, Claimant's proffered medical justification for her tardiness fails.

Nevertheless, Claimant argues Employer's tolerance of her repeated tardiness and its random enforcement of its attendance and tardiness policies reflects that Claimant's conduct did not fall below the standards of behavior Employer expected from its employees. Therefore, citing Penn Photomounts, Claimant asserts her tardiness did not rise to the level of willful misconduct.

We disagree, for three reasons. First, unlike the situation in Penn Photomounts, Employer twice issued Claimant written warnings. The second written warning included a five-day suspension, consistent with the progressive discipline policy described by HR Manager. N.T. at 8; R.R. at 44a. As indicated by these warnings, Employer advised Claimant that it considered hers to be a serious situation that would not be accepted. Employer's warnings further advised Claimant that any future violations would result in disciplinary action, up to and including termination of employment. Habitual or chronic tardiness, particularly after a warning, exhibits a substantial disregard of the employer's interests and therefore rises to the level of disqualifying willful misconduct under Section 402(e) of the Law. Ellis; Conibear v. Unemployment Comp. Bd. of Review, 463 A.2d 1231 (Pa. Cmwlth. 1983); Kolcun v.

17

Unemployment Comp. Bd. of Review (Pa. Cmwlth., No. 2079 C.D. 2016, filed November 29, 2017) (unreported).

Second, unlike the situation in Penn Photomounts and Great Valley Publishing, the fact-finders here did not accept Claimant's evidence about the excuse for her tardiness. Indeed, in the absence of a physician's morning medical restrictions, both the referee and the Board specifically rejected Claimant's evidence regarding the cause of her extensive tardiness. Consequently, we reject Claimant's contention that her habitual tardiness, after receiving two written warnings, did not constitute willful misconduct.

Third, taking Claimant's argument to its logical conclusion, Employer could never prove willful misconduct because of its past leniency. The absurdity of such a result renders Claimant's argument unpersuasive.

### D. Good Cause for Rule Violations
### 1. Argument

Claimant further contends she had good cause for violating Employer's tardiness rule because she needed to start work later due to the effects of her medication. A claimant may show good cause for a violation of her employer's work rule if she can establish her actions or conduct were reasonable in light of all the circumstances. Caterpillar v. Unemployment Comp. Bd. of Review, 703 A.2d 452 (Pa. 1997); Grand Sport Auto. Absence due to illness constitutes good cause and does not constitute willful misconduct. Runkle.

Here, Claimant asserts that in October 2016, Employer initially granted her request to begin work at 10:00 a.m. However, Claimant's new manager, who took over in 2017, denied her request to continue reporting to work at 10:00 a.m. because it would not be fair to the other employees. N.T. at 27; R.R. at 63a.

Claimant also asserts Employer provided no written evidence of a policy requiring medical documentation for a schedule change. Rather, HR Manager's testimony is the sole evidence that Employer required medical evidence for Claimant's requested accommodation. Thus, Claimant argues Employer did not have a sufficient basis to deny her reasonable request to start work at 10:00 a.m.

Claimant further argues the referee disregarded her reasons for tardiness and did not fully consider the extent that Employer's denial of a medical-related accommodation affected her ability to report to work on time. In particular, the referee did not consider the fact that Claimant's medical issues were always present and continuing since October 2016 and that they affected her each morning. Claimant asserts that if Employer would have granted her request and allowed her to report to work at 10:00 a.m., she more than likely would not have been tardy at all.

Claimant also contends she had good cause for her tardiness on her last day of work as a result of public transportation running behind schedule. To that end, Claimant asserts the referee stated in her decision that Claimant "might have had good cause for the last tardiness …." Referee's Op. at 2; R.R. at 92a.

19

## 2. Analysis

We again note that the Board specifically rejected as not credible Claimant's testimony that her medical conditions caused her tardiness. Bd. Op. at 1. In unemployment compensation cases, the Board is the ultimate fact-finder and is empowered to resolve all matters of witness credibility, evidentiary weight and conflicts in the evidence. Ductmate Industries, Inc. v. Unemployment Comp. Bd. of Review, 949 A.2d 338 (Pa. Cmwlth. 2008). In light of the Board's adverse credibility finding, Claimant's assertions of good cause based on medical reasons fail.

We also note that an employer has a right to run its business according to its own beliefs, and its internal policies and judgment may not be restricted absent compelling reasons. Metro. Edison Co. v. Unemployment Comp. Bd. of Review, 606 A.2d 955 (Pa. Cmwlth. 1992). This Court will not substitute its judgment or allow the Board to supersede an employer's reasonable managerial prerogatives. Id. At the referee's hearing, HR Manager testified that if an employee's doctor provides a written request for an accommodation based on a medical condition, Employer will follow the doctor's request to the letter. N.T. at 13-14; R.R. at 49a-50a. However, Claimant never presented a doctor's note justifying her request to begin work at 10:00 a.m. because of a medical condition. F.F. No. 11; N.T. at 13-14; R.R. at 49a-50a.

Further, as discussed above, it is not necessary that Employer's medical accommodation policy be written. Graham; Fera. A witness's testimony may be sufficient to establish the existence of a rule. See Chapman v. Unemployment Comp. Bd. of Review, 20 A.3d 603 (Pa. Cmwlth. 2011) (testimony of an employer's Human Resource Administrator and Director of Nursing adequate to support a Board finding

20

regarding the existence of a work policy prohibiting use of cell phones while on duty). Here, HR Manager's testimony sufficiently established that Claimant failed to meet Employer's requirement for a medical accommodation by failing to provide a doctor's note stating she needed a later start time for work. N.T. at 14-15; R.R. at 49a-50a. In light of Claimant's failure to credibly establish that her medical problems caused her repeated violations of Employer's attendance policy, we must hold Claimant failed to establish good cause for her violation of Employer's attendance policy. Grand Sport Auto.

Finally, Claimant contends she had good cause for her tardiness on her last day of work as a result of a delay in public transportation. See F.F. No. 11. To that end, the referee stated in her decision that Claimant "might have had good cause for the last tardiness …." Referee's Op. at 2; R.R. at 92a. We encountered a similar set of circumstances in Grand Sport Auto. There, we recognized that although the claimant had good cause for his final absence, his history of unexcused tardiness and absences, not just his final absence, precipitated his discharge.

Similarly here, Claimant's tardiness continued, even after receiving two warnings. Although Claimant might have had good cause for her last tardiness, this incident, by itself, did not precipitate her discharge. Rather, Claimant's repeated incidents of tardiness, after receiving two warnings, established a pattern of conduct that fell below the standard of behavior Employer had a right to expect. Grand Sport Auto; Dotson.

21

Relatedly, we distinguish certain cases in which this Court held that despite a claimant's troublesome attendance history, he may qualify for benefits if his last absence was justified. E.g., Tritex Sportswear, Inc. v. Unemployment Comp. Bd. of Review, 315 A.2d 322 (Pa. Cmwlth. 1974) (only substantial evidence question raised; claimant's assertion of illness supported by medical certificate); Howard Hanna Holdings, Inc. v. Unemployment Comp. Bd. of Review (Pa. Cmwlth., No. 1430 C.D. 2013, filed April 3, 2014) (unreported) (claimant submitted documentation to support excuse of emergency care for dog). In neither Tritex Sportswear nor Howard Hanna was there a description of attendance issues nearly as numerous as presented here. Also, the panel for the 1974 decision in Tritex Sportswear did not have the benefit of our recent reported *en banc* decision in Grand Sport Auto. Consistent with Grand Sport Auto, where there is an extensive history of attendance problems, an employer need not focus solely on the last event.

Therefore, the Board did not err in determining that Employer met its burden of proving it discharged Claimant for willful misconduct.


_____
ROBERT SIMPSON, Judge

22

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

R. W-M.,                                    :
                        Petitioner           :
                                            :   No. 1817 C.D. 2017
            v.                              :
                                            :
Unemployment Compensation                   :
Board of Review,                            :
                        Respondent          :

# **O R D E R**

**AND NOW**, this 9th day of January, 2019, for the reasons stated in the foregoing opinion, the order of the Unemployment Compensation Board of Review is **AFFIRMED**.

---
ROBERT SIMPSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

R. W-M.,                                    :
                    Petitioner               :
                                            :
        v.                                  :    No. 1817 C.D. 2017
                                            :    Argued: September 18, 2018
Unemployment Compensation Board             :
of Review,                                  :
                    Respondent              :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ROBERT SIMPSON, Judge (P)
           HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

DISSENTING OPINION
BY PRESIDENT JUDGE LEAVITT                        FILED:  January 9, 2019

        Respectfully, I dissent.  The Referee erred in two respects.  First, the
Referee allowed Employer Retail Store to establish the terms of its written policy on
tardiness and progressive discipline with testimony alone.  Second, the Referee
improperly stopped Claimant's testimony about how her medical condition affected
her ability to get to work on time.  The Referee was free not to believe Claimant's
testimony, but she erred in denying Claimant the opportunity to speak because that
testimony was relevant to whether her repeated tardiness was intentional.

        Claimant, a 17-year employee of Retail Store, has a history of
depression and anxiety that caused her to go on sick leave for the first nine months
of 2016.  In October, Claimant returned to work with an accommodated work
schedule of 10:00 a.m. to 5:00 p.m.  In January of 2017, a new manager ended this
accommodation, and set her schedule for 9:15 a.m. to 6:15 p.m.  Thereafter,
Claimant began to be late for work.  Claimant was discharged in May for what

Employer characterized as a violation of its written policy prohibiting tardiness by employees. Contrary to the majority, I would hold Employer failed to make its case.

Different employers may have different attitudes towards tardiness. Some may not care at all, especially where the employee can make up the time by working later. Thus, the employer needs to establish its definitive policy on this matter. When an employee is discharged for a work rule violation, the employer bears the burden of proving the rule's existence and the fact of its violation. *Walsh v. Unemployment Compensation Board of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). An employer is not always required to produce written evidence of its policies, but the document may be required where the employer's testimony is not sufficient.

In *Lewis v. Unemployment Compensation Board of Review*, 42 A.3d 375 (Pa. Cmwlth. 2012), the claimant engaged in a loud confrontation with a co-worker during his shift. Both employees boasted about their familiarity with firearms and their toughness. The claimant was later discharged for deliberately violating the employer's policy prohibiting threatening confrontations between employees in the work place. At the hearing, the employer's witness testified that every employee received the employer's "rules and regulations" and "harassment policy" at the start of employment. *Lewis*, 42 A.3d at 376. However, the witness did not bring copies of the workplace rules and policies to the hearing. Nevertheless, the Referee determined that the claimant violated the employer's policy prohibiting threatening conduct, and the Board affirmed.

On appeal, this Court reversed. It held that the Board's finding of a policy violation was not supported by substantial evidence. The employer's witness stated that the employer had rules and policies and that the claimant should have

known that they prohibited a heated argument in the workplace. However, the witness did not identify the specific rule or policy that the claimant violated, and the employer did not present any documentary evidence of its written policy. This Court concluded that the witness's testimony was insufficient to establish the rule that the Board found the claimant violated.

Likewise, here, the Board gave Employer a pass by allowing it to establish the terms of its "[Retail Store] Policies and Procedures" with testimony alone. As in *Lewis*, Employer's witness testified that the employee handbook requires employees to be on time and to contact their manager if they are going to be late. He further explained that each employee is given a copy of the handbook to review and sign when they are hired; a signed copy is kept in the employee's file. When an employee violates a rule in the handbook, she will receive an oral warning; subsequent violations will be followed by a written warning. An employee who receives a written final warning may be suspended or discharged. Employer decides which of the progressive discipline steps to follow.

Employer's witness asserted that Employer followed the handbook with respect to its progressive discipline of Claimant. He testified that he gave Claimant an oral warning about tardiness and reminded her that the policy required her to notify Employer if she was running late. He stated that on January 24, 2017, Employer issued a written warning to Claimant for "failure to adhere to [Retail Store] Policies and Procedures." Notes of Testimony, 8/1/2017, at 8 (N.T. ___); Reproduced Record at 44a (R.R. ___). On April 27, 2017, Employer issued a second written final warning for "failure to adhere to [Retail Store] Policies and Procedures." R.R. 10a. However, neither written warning stated that the "failure"

was tardiness, let alone identified the specific policy or procedure that Claimant failed to honor.

Employer's entire willful misconduct case was built upon Employer's handbook, from its anti-tardiness rule to its progressive discipline procedures. Employer did not produce the "Policies and Procedures" manual at the hearing because Employer "thought it was part of the record." N.T. 7; R.R. 43a. I agree with Claimant that Employer's mistake is fatal to its willful misconduct case. Neither the anti-tardiness work rule nor Employer's progressive discipline steps can be established without the handbook in the record. Employer's testimony was insufficient under *Lewis*, 42 A.3d 375.

At the Referee hearing, Claimant attempted to explain how her chronic depression affected her ability to get to work by 9:00 a.m. She stated, "I take medication and with depression in the mornings[;] it's toughest in the morning." N.T. 19; R.R. 55a. When Claimant's counsel asked Claimant how the medications affected her, the Referee, on her own initiative, cut off Claimant's testimony as irrelevant. The Referee stated: "I'm going to interrupt this line of questioning. For unemployment purposes, I'm concerned with restrictions." *Id.* A factfinder has no business making a relevancy objection on behalf of one of the parties. Even so, the Referee erred in her relevancy determination. Claimant's proffered testimony directly related to whether her tardiness was deliberate and whether she had good cause for her tardiness.

An employer cannot demonstrate willful misconduct by negligence. Rather, its evidence must show "conduct [ ] of an intentional and deliberate nature." *Myers v. Unemployment Compensation Board of Review*, 625 A.2d 622, 625 (Pa. 1993) (quotation omitted). This Court's jurisprudence has long recognized that

MHL-4

attendance issues may warrant an employee's dismissal, but it will not render the employee ineligible for compensation unless the conduct is willful as opposed to negligent. Further, "excessive absenteeism" does not constitute willful misconduct where the absences are caused by a medical reason. *Sprague v. Unemployment Compensation Board of Review*, 647 A.2d 675, 680 (Pa. Cmwlth. 1994). Consistent with these precepts, this Court held in *Tritex Sportswear, Inc. v. Unemployment Compensation Board of Review*, 315 A.2d 322 (Pa. Cmwlth. 1974), that a claimant's history of absenteeism was not disqualifying because her last absence was the result of illness.

The Referee rejected Claimant's attempt to provide a medical reason for her tardiness because it was not supported by a doctor's note directing a 10:00 a.m. starting time. First, Employer was fully aware of Claimant's medical condition. Second, Employer's witness conceded that when he denied Claimant's request for a 10:00 a.m. start time, he did not tell her that her doctor's note was insufficiently detailed. This was particularly problematic because that same doctor's note was used by Employer to accommodate Claimant's schedule from October to January. The Referee's mistake comes back to her quick, and erroneous, decision that this was an accommodation case as opposed to whether Claimant had a "medical reason" for her tardiness.

Finally, assuming, *arguendo*, that Employer established a work rule by testimony, its willful misconduct case still fails because Claimant's final incident of tardiness was not her fault. Even the Referee acknowledged this fact.

In *Runkle v. Unemployment Compensation Board of Review*, 521 A.2d 530 (Pa. Cmwlth. 1987), the claimant, who had a history of absenteeism, was discharged after she was absent from work for a week. This Court held that because

the claimant's most recent absence had been caused by medical issues, it did not constitute willful misconduct. The claimant's long history of absenteeism constituted grounds for discharge, but not for the denial of benefits.[1]

In *Grand Sport Auto Body v. Unemployment Compensation Board of Review*, 55 A.3d 186 (Pa. Cmwlth. 2012), a case on which the majority relies, only three out of the claimant's 19 absences related to illness or a doctor's appointment; the claimant had no justification for the other 16 absences. The fact that he had good cause for his final absence, *i.e.*, a cancelled airplane flight, was held irrelevant and did not outweigh his history of excessive absenteeism. *Grand Sport Auto Body* did not overrule *Tritex* or *Runkle*, and it is limited to its facts, *i.e.*, a claimant who could not establish good cause for 16 days of absences.

This is a *Runkle* case, not a *Grand Sport Auto Body* case,[2] as Claimant tried to establish. However, her testimony was improperly cut short by the Referee.

---

[1] The majority states that Claimant was tardy 76 times. There was no such finding by the Board. Although Employer's witness stated that Claimant was tardy 76 times, he acknowledged that he based that number on a timekeeping document, not his personal knowledge. The timekeeping document itself does not support the claim of 76 incidents of tardiness. It shows the hours Claimant worked but not her shifts. Even assuming a start time of 9:00 a.m., for all days, including Sundays, it does not show anything close to 76 instances of tardiness.

[2] Since *Grand Sport Auto Body*, this Court has continued to apply *Tritex* and *Runkle*. In *Howard Hanna Holdings, Inc. v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1430 C.D. 2013, filed April 3, 2014) (unreported), the claimant was put on probation due to absenteeism and leaving work early without her employer's approval. When notified that her dog needed immediate veterinary assistance, the claimant left and did not return to work, in spite of the employer's request. The employer fired the claimant.

The referee found that the claimant was eligible for benefits, despite her history of absenteeism, because she had good cause for the last absence. This Court held that even where an employee has a history of absenteeism, the employee is entitled to receive compensation benefits where the final absence precipitating the discharge is based on good cause. Pursuant to Commonwealth Court Internal Operating Procedures §414(a), 210 Pa. Code §69.414(a), this Court's unreported opinion in *Howard Hanna Holdings* may be cited for its persuasive value and not as binding precedent.

The factfinder can find Claimant's explanation not credible, but the factfinder first has to listen to it.

Employer discharged Claimant for being late on May 25, 2017. Claimant's bus was delayed, and she was one of many employees delayed by traffic. Employer's Human Resources Manager acknowledged that "other people [were not] reprimanded for their lateness on that day." N.T. 26; R.R. 62a. Contrary to the Referee's holding, Claimant's good cause for being late on May 25, 2017, was relevant under *Runkle*.

Claimant's complete testimony, if allowed, may have convinced the factfinder that her repeated tardiness was neither deliberate nor intentional. Assuming Employer demonstrated a work rule on tardiness and that it followed its progressive discipline procedures without producing its written policy, then Claimant's testimony, if not stopped at the proffer stage, could have established good cause for violating Employer's policy.[3]

For all of these reasons, I would reverse the Board and remand for a new hearing to allow Claimant to testify more completely.

_____
MARY HANNAH LEAVITT, President Judge

---

[3] It goes without saying that a credibility determination cannot be made on the basis of a proffer.

MHL-7